Lance Corporal (E–3) Daniel E. MOYLAN 2186719 U.S.M.C., Plaintiff,

v.

Melvin R. LAIRD, Secretary of Defense, John H. Chafee, Secretary of the Navy and Brigadier General J. C. Fegan, the Convening Authority, Defendants.

Civ. A. No. 4179.

United States District Court
D. Rhode Island.

Oct. 20, 1969.

Richard P. Kearns, Providence, R. I., for plaintiff.

Lincoln C. Almond, U. S. Atty., William J. Gearon, Asst. U. S. Atty., Providence, R. I., for defendants.

## OPINION

PETTINE, District Judge.

This is a civil equity action pursuant to Fed.R.Civ.P. 65 in which the plaintiff, a member of the United States Marine Corps, seeks an injunction prohibiting military authorities from subjecting him to an allegedly unconstitutional court martial. Jurisdiction is predicated upon 28 U.S.C. § 1331. On September 11, 1969 this court issued temporary restraining relief and requested extensive briefs from the parties on various questions of law. The restraining order was extended by agreement of the parties, an extensive discussion of the law ensued, and now, after consideration of all the arguments, this court is prepared to rule.

There is no disagreement as to the facts of the case; they are as follows.[1] On or about February 1, 1969 the plaintiff, without permission, left his unit on the Island of Vieques and went to Kingston, Jamaica. He was dressed in civilian clothing and was carrying an unlocked zipper-type handbag. While he was in Kingston, he left his handbag unattended on the floor of the air terminal. Upon his subsequent return to San Juan, he was searched by customs inspection officials who found 42.5 ounces of marijuana. On or about February 3, 1969 the plaintiff appeared before United States Commissioner Harley A. Miller in the United States District Court for the District of Puerto Rico and was charged with violations of 21 U.S.C. § 176a and 26 U.S.C. § 4741(a). The plaintiff entered pleas of not guilty and was released in his own recognizance pending action by the grand jury. Immediately thereafter, plaintiff returned to duty with his unit of the Marine Corps. In

---

1. The parties have agreed that these facts shall constitute facts for final judgment in this litigation. Furthermore, it has been stipulated that these facts shall not control in any subsequent criminal proceeding arising out of the matters here described.

late April, 1969, plaintiff was charged by military authorities with violation of Article 134 of the Uniform Code of Military Justice for possession of marijuana and with violation of Article 86 of the Uniform Code of Military Justice for being absent without authority from his place of duty. Both such charges stemmed from the previously described incidents which occurred on or about February 1, 1969. On or about June 27, 1969, the charges of the military authorities were investigated under Article 32 of the Uniform Code of Military Justice. The Investigating Officer declined to recommend dismissal of the charges, notwithstanding the plaintiff's argument that military jurisdiction violated the Constitution. The Convening Authority referred the matter to a General Court Martial which was scheduled to begin on September 15, 1969. On September 11, this court restrained that court martial.

### Jurisdiction

Defendants argue that 28 U.S.C. § 1331 cannot be the basis for jurisdiction. In essence the defendants argue that there is no substantial federal question, that the complaint fails to allege the requisite amount in controversy, and that the plaintiff has failed to exhaust the intra-military criminal processes.

■ When a plaintiff in good faith asserts a right which is predicated upon the provisions of the United States Constitution, and when that right may well be recognized if the Constitution is given a certain construction, then there is a substantial federal question. See Martinez v. Southern Ute Tribe, 273 F.2d 731 (5th Cir.1960). This general rule applies to rights asserted by servicemen against their superiors or against other supervisory personnel. See Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); Reed v. Franke, 297 F.2d 17 (4th Cir.1961). In the instant case, there can be little doubt that the plaintiff has asserted a most serious constitutional claim, the resolution of which turns upon a delicate application of O'Callahan v. Parker, 395 U.S. 258,

89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) to the instant facts.

■ At the hearing of this matter in full, the plaintiff submitted an amended complaint in which he prayed for $11,-000 damages. The defendants have raised no particularized objection to this jurisdictional allegation. Hence, the requisite jurisdictional amount has been well pleaded. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Moreover, even if there be a jurisdictional amount attack, this court is of the opinion that jurisdiction does lie. See Murray v. Vaughn, 300 F.Supp. 688 (D.R.I. 1969).

The controlling case with respect to the issue of whether plaintiff must exhaust intra-military criminal processes is Noyd v. Bond, 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969). In that case petitioner, a career officer in the Air Force who had come to believe that this country's participation in the Vietnamese conflict is unjust and immoral, refused to obey an order issued December 5, 1967, which order required him to teach one of the junior officers at the Cannon Air Force Base, New Mexico, to fly a military airplane, and which order he deemed to be a violation of his conscience. A general court martial was convened and found Captain Noyd guilty. After announcement of sentence, Captain Noyd was confined to quarters, and upon approval of sentence by the Commanding Officer at Cannon AFB, was confined in the United States Disciplinary Barracks, Fort Leavenworth, Kansas, pending completion of appellate review. Captain Noyd's attorneys then commenced appeal of the merits of his conviction within the military justice system and simultaneously initiated a petition for writ of habeas corpus in the United States District Court for the District of New Mexico. The habeas petition was grounded upon the argument that Captain Noyd's post-sentence confinement at Cannon AFB and his proposed incarceration in Leavenworth were in violation of certain provi-

554

sions of the Uniform Code of Military Justice. The District Court in granting partial relief held that exhaustion of military remedies was not a precondition to Captain Noyd's petition. The Court of Appeals for the Tenth Circuit reversed the District Court. The United States Supreme Court affirmed the reversal.

 Of utmost importance to the issue in the instant case is the Court's discussion of the availability of federal court relief where a constitutional claim is asserted which claim is directed at the very power of the military to process criminally the petitioner. In that connection, the Supreme Court stated:

Petitioner contends that our decisions [United States ex rel.] Toth v. Quarles, 350 U.S. 11 [76 S.Ct. 1, 100 L.Ed. 8] (1955); Reid v. Covert, 354 U.S. 1 [77 S.Ct. 1222, 1 L.Ed.2d 1148] (1957); and McElroy v. United States ex rel. Guagliardo, 361 U.S. 281 [80 S.Ct. 305, 4 L.Ed.2d 282] (1960), justify his position that exhaustion of military remedies is not required in this case. The cited cases held that the Constitution barred the assertion of court-martial jurisdiction over various classes of civilians connected with the military, and it is true that this Court there vindicated petitioners' claims without requiring exhaustion of military remedies. We did so, however, because we did not believe that the expertise of military courts extended to the consideration of constitutional claims of the type presented. Moreover, it appeared especially unfair to require exhaustion of military remedies when the petitioners raised substantial arguments denying the right of the military to try them at all.

Noyd v. Bond, 395 U.S. 683 at 696 n. 8, 89 S.Ct. 1876 at 1884, 23 L.Ed.2d 631 (1969). The application of the language of the Court in *Noyd* to that situation where the petitioner alleges that the assertion of jurisdiction by the military is unconstitutional mandates the conclusion that exhaustion is not required. The federal district courts are the front lines of constitutional litigation, more suited to decision-making in the constitutional area than any of the various federal agencies or the military tribunals. Moreover, the application of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) to variant fact-patterns is not a function which requires any special military expertise. Indeed, the whole thrust of *O'Callahan* suggests the contrary. Finally, the wrong claimed by petitioner goes to the very power of the military over him as a constitutional jurisdictional matter. This court, therefore, concludes that exhaustion of intra-military criminal processes is not prerequisite to a federal equity proceeding by a member of the military who alleges that a court martial convened to try him is without jurisdiction as a constitutional matter pursuant to the principles of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

### The Merits

In O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) the petitioner was charged with attempted rape, housebreaking, and assault with intent to rape. The crimes charged by the military were committed while the petitioner was on leave, within the civilian community and against a civilian. The Supreme Court held that the military did not, as a constitutional matter, have jurisdiction to try the petitioner under Articles 80, 130 or 134 of the Uniform Code of Military Justice.

In holding that "* * * the crime to be under military jurisdiction must be service-connected * * *" the Court established certain guidelines for future judicial elaboration.

In the present case petitioner was on leave when he committed the crimes with which he is charged. There was no connection—not even in the remotest one—between his military duties and the crimes in question. The crimes were not committed on a military post or enclave; nor was the

person whom he attacked performing any duties relating to the military. Moreover, Hawaii, the situs of the crime, is not an armed camp under military control, as are some of our far-flung outposts.

Finally, we deal with peacetime offenses, not with authority stemming from the war power. Civil courts were open. The offenses were committed within our territorial limits, not in the occupied zone of a foreign country. The offenses did not involve any question of the flouting of military authority, the security of a military post, or the integrity of military property.

O'Callahan v. Parker, 395 U.S. 258 at 273–274, 89 S.Ct. 1683 at 1691, 23 L.Ed. 2d 291 (1969). In applying *O'Callahan* to future cases in an effort to determine service-connection, the courts must attempt to identify a correspondence between the facts of a particular situation with those which the Supreme Court set out in *O'Callahan* and there deemed relevant to the judgment that the crimes in question were not service-connected. While the approach might appear rather simplistic, it seems the most reliable manner in which to proceed in applying *O'Callahan*, and more specifically in determining service-connection in a given factual situation.

It is not strange that in a subsequent case interpreting and applying *O'Callahan* this very approach was used by the United States Court of Military Appeals. United States v. Stephen J. Borys, No. 21,501 (September 5, 1969). The *Borys* case involved the trial by general court martial of the petitioner for the crimes of rape, robbery, sodomy and attempts to commit such acts. The offenses themselves were committed on off duty hours, in off post civilian homes, and the victims were purely civilian females. The Court evaluated the facts in *Borys* so as to discern a correspondence with *O'Callahan* in reaching a judgment of whether there was in fact a "service-connection."

How, then, do the accused's delicts compare with those of *O'Callahan*? They, too, involve civilian victims, unconnected with the military. Neither Georgia nor South Carolina were armed camps or far-flung military posts under army control. Accused's horrible acts, like those of *O'Callahan*, did not flout military authority, breach military security, or affect military property. In fact, he himself did not even reside on post, but lived among the civilian community in which he preyed. Finally, the Courts of South Carolina and Georgia were not only open and functioning, but resort to the former's facilities led only to the accused's acquittal.

Due to the factual similarity of both cases, a determination of no service-connection was inevitable:

In sum, accused's military status was only a happenstance of chosen livelihood, having nothing to do with his vicious and depraved conduct, and none of his acts were "service-connected" under any test or standard set out by the Supreme Court. But, they like *O'Callahan's*, were the very sort remanded to the appropriate civil jurisdiction in which indictment by grand jury and trial by petit jury could be afforded the defendant.

In finding no service-connection to O'Callahan's conduct, the Supreme Court pointed out and stressed that: (1) the criminal acts were not committed on a military post, but while on leave; (2) the victim did not have any military duty; (3) the situs of the crime was not an armed camp under military control, as are some of our far-flung outposts; (4) the civilian courts of Hawaii were open and the crime was committed within our territorial limits; (5) the act did not involve the flouting of military authority, a breach of military security, or a violation of the integrity of military property.

How do the actions of Corporal Moylan compare with those factual guidelines enunciated in *O'Callahan*? Let us consider these actions: (1) the alleged

act of wrongfully possessing marijuana did not occur on a military post, but within the civilian community, San Juan, Puerto Rico; (2) there was no particular military victim involved who was performing some military duty; (3) the situs of the crime, San Juan, Puerto Rico, was certainly not an armed camp under military control, as are some of our far-flung outposts; (4) the civilian courts of Puerto Rico were not only open and functioning, but the plaintiff himself was apprehended by civilian authorities detained for at least one day by these civilian authorities in a civilian facility, and subsequently arraigned before a civilian United States Commissioner for violation of Title 21 United States Code, Section 176a, and Title 26 United States Code, Section 4744, which are strictly civilian offenses. Indeed, there has already been recourse to civilian criminal process.

 Notwithstanding these similarities, the defendants raise several arguments in support of their motion to dismiss. First, they argue that an essential requisite of *O'Callahan* is that the member of the military be charged in the civilian courts with the same offense that constitutes the basis of the military charge against him. In the instant case, then, it would be necessary for there to be a charge of possession of marijuana pending in the Puerto Rico system because that is the basis for the military's charge of violation of Article 134. I do not read *O'Callahan* to so require. Rather, *O'Callahan* looks to whether the civilian courts are open and to whether the particular domestic civilian sovereignty is *able* to charge the military personnel involved. It would unduly diminish the protections of *O'Callahan* if matters cognizable in civilian courts but not actually cognized could be tried in military courts. If a man is entitled to the constitutional safeguards set out in *O'Callahan*, he is equally entitled to benefit from the decision of a domestic civilian sovereignty not to try him at all. Moreover, I read *O'Callahan* to focus on the underlying

conduct involved in each particular case and not on the specific military charge that is levelled. Hence, if the conduct involved is able to be cognized in the civilian courts, and is not service-connected, the military system does not gain jurisdiction merely by denominating the conduct something different from its civilian denomination and then making that "something different" a violation of Article 134. To permit this would be to ignore the suggestive language of *O'Callahan* itself.

> "Article 134, already quoted, punishes as a crime 'all disorders and neglects to the prejudice of good order and discipline in the armed forces.' Does this satisfy the standards of vagueness as developed by the civil courts? It is not enough to say that a court-martial may be reversed on appeal. One of the benefits of a civilian trial is that the trap of Article 134 may be avoided by a declaratory judgment proceeding or otherwise."

In the instant case, plaintiff is charged with illegal importation and transportation and with knowing failure to pay the required transfer tax. Moreover, Puerto Rico, if it so chose, could charge plaintiff with possession; see Leary v. United States, 395 U.S. 6 at pp. 16–17 and nn. 15–16, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); (Puerto Rico adopted the Uniform Narcotic Drug Act in 1934); Puerto Rico's failure so to do for whatever reasons, does not supply anything to the defendants' claim for military jurisdiction. Finally, in this regard I am quick to point out that this same argument would be qualitatively different should the civilian sovereignty be non-domestic, as for example, in Vietnam.

 Defendants' second argument rests upon the fact that plaintiff was absent without leave at the time of his arrest. However, the relief here sought does not go to the charge now pending against the plaintiff of violation of Article 86 for being absent without leave. Moreover, the fact of leave is not a controlling element in either *O'Callahan* or in *Borys*. The test of service-connection

rests on where the crime was committed, whether its victim, if any, was involved in the performance of a military duty, and whether there was civilian criminal process available to handle that type of offense. The question of leave only emphasizes the fact that the crime was not committed within a military reservation, and that it probably involved a non-military victim. Leave merely gives the potential criminal the opportunity to enter the civilian community. Leave itself does not change the quality of the criminal act nor does its presence or absence change the fact that the crime itself is committed within a civilian community, involves if any, a civilian victim, and could be completely handled within that community by an application of its own criminal processes.

■■■■■ The defendants' final argument is that possession of marijuana is a crime of special military significance because it tends to undermine military discipline. Notwithstanding the decision of the United States Court of Military Appeals in United States v. Beeker, No. 21,787 (September 12, 1969), a decision which this court has accorded great respect, the defendants' argument must fail. The court is frank to acknowledge that use of marijuana by servicemen, whether on or off base, whether on or off duty, might well have special military significance. Accordingly, the court accepts the reasoning of the *Beeker* decision in so far as it deals with use of marijuana. However, possession is an entirely different matter. It is a matter cognizable by the civilian sovereignties, who are presently busily coping with it. No more so than the commission of other crimes does this particular crime tend to undermine military authority. Of special interest to this court, moreover, is the fact that Beeker's possession was specified in the charge as being on-base possession, while plaintiff here is charged with off-base possession. Hence, I would note that *Beeker* is distinguishable on its facts, although not on its dicta from the instant case. For all the above stated reasons,

the court concludes that off-base possession of marijuana within the peripheries of the civilian United States is not a matter over which the military jurisdiction extends.

The defendants' motion to dismiss is denied. This opinion constitutes the findings of facts and conclusions of law by the court as required by the Federal Rules of Civil Procedure.

The defendants are permanently enjoined from proceeding in any way with disposition of the charge now pending against the plaintiff which alleges a violation of Article 134 of The Uniform Code of Military Justice.

Plaintiff will prepare an order for the court's signature.