UNITED STATES, Appellee

v

MR. RAYMOND G. AVERETTE, Appellant

19 USCMA 363, 41 CMR 363

No. 22,457

April 3, 1970

 ██ 

 █

*Stanley Faulkner, Esquire,* and *Captain Robert B. Harrison, III,* argued the cause for Appellant, Accused.

*Captain Salvatore A. Romano* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant* and *Major Edwin P. Wasinger.*

## Opinion of the Court

DARDEN, Judge:

Our concern in this case is with the liability for trial by court-martial of a civilian employee of an Army contractor in the Republic of Vietnam. To decide the case we must consider whether the words "in time of war" as used in Article 2(10), Uniform Code of Military Justice, 10 USC § 802, mean a *declared* war.

A general court-martial at Long Binh, Vietnam, convicted Raymond G. Averette of conspiracy to commit larceny and attempted larceny of 36,000 United States Government-owned batteries. After earlier appellate review, with some modification of findings, his sentence now stands as confinement at hard labor for one year and a fine of $500.00.

The history of what is now Article 2(10), Code, supra, has been developed by Colonel William Winthrop. The British Articles of War in existence at the time of the Revolutionary War contained the precursor, which provided:

"All Suttlers and Retainers to a Camp, and all persons whatsoever serving with Our Armies in the Field, though no inlisted Soldiers, are to be subject to orders, according to the Rules and Discipline of War." [Section XIV, Article XXIII, Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 941.]

The first Articles of War adopted in this country by the Provisional Congress of Massachusetts Bay in April 1775 included a provision nearly identical to the British counterpart. Article XXXII of the American Articles of War, enacted by the Continental Congress in June 1775 had a substantially similar coverage and became Article 23 of Section XIII of the American Articles of War of 1776.[1] The first signifi-

---

[1] Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, pages 941–981.

cant revision of this provision occurred in the Articles of War of 1916, which attempted to expand the exercise of military jurisdiction over civilians to times of peace as well as war in these words:

"All retainers to the camp and all persons accompanying or serving with the armies of the United States without the territorial jurisdiction of the United States, and in time of war all such retainers and persons accompanying or serving with the armies of the United States in the field, both within and without the territorial jurisdiction of the United States, though not otherwise subject to these articles. . . ." [Article 2(d) of the Articles of War of 1916.]

The concept of military jurisdiction over specified classes of civilians in time of peace and war was continued in the enactment of Article 2(10) and (11) of the Uniform Code of Military Justice.

Despite the existence of statutory provisions for the exercise of court-martial jurisdiction over civilians in certain circumstances, the Supreme Court in a series of cases beginning with Toth v Quarles, 350 US 11, 100 L Ed 8, 76 S Ct 1 (1955), has disapproved the trial by courts-martial of persons not members of the armed forces. *Toth* involved the court-martial of a civilian for an offense committed while he was on active duty. In Reid v Covert, 354 US 1, 1 L Ed 2d 1148, 77 S Ct 1222 (1957), the Court held that civilian dependents accompanying the armed forces overseas in time of peace were not triable by court-martial for capital offenses. The Court expanded this holding in Kinsella v Singleton, 361 US 234, 4 L Ed 2d 268, 80 S Ct 297 (1960), to prohibit military jurisdiction over civilian dependents in time of peace, regardless of whether the offense was capital or noncapital. Grisham v Hagan, 361 US 278, 4 L Ed 2d 279, 80 S Ct 310 (1960), held civilian employees committing capital offenses not amenable to military jurisdiction; this holding was enlarged to embrace noncapital offenses in McElroy v Guagliardo, decided and reported with Wilson v Bohlender, 361 US 281, 4 L Ed

2d 282, 80 S Ct 305 (1960). Since all these decisions covered offenses occurring in periods other than a time of declared war, they do not constitute authority that even in time of declared war courts-martial have no jurisdiction to try those who are not members of the armed forces, regardless of the connection between their offenses and the objectives of military discipline. The Supreme Court pointed out in Reid v Covert, supra, that the constitutional grants of legislative authority to the Congress, collectively referred to as the war powers, are considerably more extensive than the authority in Article I, section 8, clause 14, of the Constitution to prescribe rules for the government of the armed forces standing alone.

Two cases decided in 1969 are urged upon us as bars to the exercise of court-martial jurisdiction over a civilian. The Fifth Amendment language excepting cases "arising in the land or naval forces" from the requirement for trial by jury was construed in O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969), as a limitation on the authority of Congress to legislate rules for the government of land and naval forces. The factual context of the *O'Callahan* holding involved an accused still on active duty. We find nothing in that opinion that causes us to conclude a civilian accompanying the armed forces in the field in time of a declared war is invulnerable to trial by military courts.

In Latney v Ignatius, 416 F2d 821 (CA DC Cir) (1969), the Court of Appeals for the District of Columbia referred to "the spirit of *O'Callahan,* and of the other Supreme Court precedents there reviewed," and concluded that Article 2(10) of the Uniform Code of Military Justice could not be viewed so expansively as to reach a civilian seaman who lived on his ship while waiting for it to turn around in Da Nang, Vietnam, and who was not assimilated to military personnel in terms of living quarters or conditions. Averette, in contrast, was employed every day within Camp Davies, a United States Army installa-

tion. He had access to a variety of Army facilities and benefits including the post exchange, the commissary, banking privileges, and other welfare and recreational activities. We should note, though, at this point that the murder for which Latney was tried was not cognizable in a United States District Court while the offenses with which Averette was charged are so cognizable.

Several cases have been cited to us to support a contention that undeclared wars are included within the term "time of war." Bas v Tingy, 4 Dallas 37 (U.S. 1800); Montoya v United States, 180 US 261, 45 L Ed 521, 21 S Ct 358 (1901); Hamilton v McClaughry, 136 F 445 (D Kansas) (1905); United States v Bancroft, 3 USCMA 3, 11 CMR 3 (1953); United States v Ayers, 4 USCMA 220, 15 CMR 220 (1954); United States v Sanders, 7 USCMA 21, 21 CMR 147 (1956); United States v Shell, 7 USCMA 646, 23 CMR 110 (1957). None of these cases dealt with military jurisdiction over civilians. In Bas, the Court held that the United States and France were in a qualified state of hostility for the purpose of determining which of two acts of Congress relating to salvage payments was controlling; Montoya held that for the purpose of recovering property damage under the Indian Depredation Act, a state of war was created by Indian acts of general hostility to settlers and the Government's having dispatched a military force to subjugate them; and in Hamilton, the Boxer Uprising was held a time of war for a court-martial conviction of an Army private for murdering a corporal in China. The cases decided by this Court during the Korean War involved military persons charged with military offenses of sleeping on post, absence without leave, and desertion.

In United States v Anderson, 17 USCMA 588, 38 CMR 386 (1968), this Court decided that a two-year statute of limitations for absence without leave had not been tolled because the conflict in Vietnam constitutes a "time of war" within the meaning of Article 43(a), Uniform Code of Military Justice, 10 USC § 843, which dispenses with the

statute of limitations in such circumstances. The three judges rested their reasoning in Anderson on different grounds. The instant case is different from Anderson in at least two ways. First, Anderson was a soldier, while Averette was a civilian at the time of his alleged offenses. Second, the statute in question in the present case subjects civilians to courts-martial, while the statute in Anderson affected the statute of limitations for a military offense by a member of the armed forces. Here the constitutionally delicate question of military jurisdiction over civilians recurs.

We conclude that the words "in time of war" mean, for the purposes of Article 2(10), Code, supra, a war formally declared by Congress. Pyramid Life Insurance Company v Masch, 134 Colo 56, 299 P2d 117 (1956); Ex parte Givins, 262 F 702 (ND Ga) (1920). As a result of the most recent guidance in this area from the Supreme Court we believe that a strict and literal construction of the phrase "in time of war" should be applied. A broader construction of Article 2(10) would open the possibility of civilian prosecutions by military courts whenever military action on a varying scale of intensity occurs.

We do not presume to express an opinion on whether Congress may constitutionally provide for court-martial jurisdiction over civilians in time of a declared war when these civilians are accompanying the armed forces in the field. Our holding is limited—for a civilian to be triable by court-martial in "time of war," Article 2(10) means a war formally declared by Congress. We emphasize our awareness that the fighting in Vietnam qualifies as a war as that word is generally used and understood. By almost any standard of comparison—the number of persons involved, the level of casualties, the ferocity of the combat, the extent of the suffering, and the impact on our nation—the Vietnamese armed conflict is a major military action. But such a recognition should not serve as a shortcut for a formal declaration of war, at

least in the sensitive area of subjecting civilians to military jurisdiction.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army. The charges are ordered dismissed.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

In my opinion, there is no compelling or cogent reason to construe the phrase "time of war" as used in Article 2(10) of the Uniform Code differently from the construction we have accorded the same phrase in other Articles of the Code, such as Articles 43 and 85(c). In fact, our disposition of the application for a Writ of Habeas Corpus in Latney v Ignatius, 17 USCMA 677 (1967), was predicated upon rejection of the petitioner's contention that court-martial jurisdiction over civilians under Article 2(10) depended upon a specific declaration of war by Congress. In any event, if congressional participation is required to energize the phrase in regard to court-martial jurisdiction, sufficient congressional participation is present in connection with the Vietnam conflict to fulfill the requirement. United States v Anderson, 17 USCMA 588, 38 CMR 386 (1968); compare my dissent in United States v Ayers, 4 USCMA 220, 15 CMR 220 (1954).

Although there is some language in the opinion of the United States Court of Appeals for the District of Columbia in Latney v Ignatius, 416 F2d 821 (CA DC Cir) (1969), which appears to argue against jurisdiction in a case such as this, I agree with the Court of Military Review below that the decision was predicated on the absence of facts to show a sufficient connection between the accused and the armed forces. The facts in this case establish the requisite connection. A Federal district court in Kansas has denied the accused habeas corpus relief. In my view, that decision was correct, and the facts in this case support court-martial jurisdiction under Article 2(10) of the Uniform Code.

I would affirm the decision of the Court of Military Review.