Gregory COLE, Plaintiff-Appellant,

v.

Melvin LAIRD, as Secretary of Defense, et al., etc., Defendants-Appellees.

No. 72–2354

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Oct. 24, 1972.

* Rule 18, 5 Cir.; *See* Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

**830**

James M. Simons, Austin, Tex., for plaintiff-appellant.

William S. Sessions, U. S. Atty., C. J. Calnan, Asst. U. S. Atty., San Antonio, Tex., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, GOLDBERG and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Petitioner Cole was convicted by an Air Force court-martial for the unlawful use of marijuana—a violation of Article 134 of the Uniform Code of Military Justice, 10 U.S.C.A. § 934—and sentenced to perform hard labor for three months, to forfeit $50 of his pay per month for six months, to be reduced to the military grade of Airman E–2, and to be restricted to the confines of Bergstrom Air Force Base for sixty days.[1] Cole immediately filed a petition in the Federal District Court for the Western District of Texas seeking a writ of habeas corpus and appropriate declaratory and injunctive relief on the ground that the court-martial which tried him was without jurisdiction over the offense. That court dismissed the case without a hearing. We reverse.

The apparent reason for the dismissal is Cole's alleged failure to exhaust his existing military remedies. Because his sentence did not include either a punitive discharge from the service or confinement for a period of at least one year, Cole was not entitled to appeal his conviction to any judicial appellate tribunal established to hear appeals in court-martial cases. Uniform Code of Military Justice, Arts. 66, 67, 10 U.S.C.A. §§ 866, 867.

The Government contends, however, that Cole has viable forums to present his claim of constitutional law in the person of the Judge Advocate General of the Air Force, Uniform Code of

---

1. The sentence was imposed by the panel of officers sitting as the court on June 4, 1971. It was modified by the court-martial convening authority by the deletion of hard labor portion of the sentence, but otherwise approved on August 17, 1971.

Shortly after this action was filed the Air Force remitted the unexecuted portion of the sentence and administratively discharged Cole. While this obviously moots the habeas corpus portion of the complaint it does not change the underlying fact that Cole continues to have a record of a federal conviction. The remaining claims of the complaint were properly within the jurisdiction of the court. 28 U.S.C.A. §§ 1331, 1343, 1361. United States ex. rel. Flemings v. Chafee, E.D.N.Y., 1971, 330 F.Supp. 193, affirmed, 2 Cir., 1972, 458 F.2d 544.

Military Justice, Art. 69, 10 U.S.C.A. § 869, or before the Board for Correction of Military Records, 10 U.S.C.A. §§ 1551–1554. Whatever may have been the efficacy of the Government's exhaustion argument regarding Article 69 is rendered academic by the action taken by Major General James S. Cheney on December 27, 1971, denying Cole's request for relief.

A careful reading of the statute creating the Board for Correction of Military Records and the cases which have been resolved through that Board convinces us that its function is one of administrative review, its expertise is inapposite for the task at hand, and its powers too limited to grant appropriate relief. Cf. Pitcher v. Laird, 5 Cir., 1970, 421 F.2d 1272, 1276.

Although it is clear that some degree of exhaustion is required before federal courts will review courts-martial convictions, it is clear that Cole's only opportunity for judicial scrutinization of his conviction lies with the federal courts. Cf. Parisi v. Davidson, 1972, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17.

■ The determination of whether or not a court-martial has jurisdiction to try a specific person for a specific crime requires a two-step inquiry: first, to determine whether or not the person is subject to the Uniform Code of Military Justice, and, second, to ascertain whether or not the offense itself was sufficiently "service connected" to be cognizable by court-martial. O'Callahan v.

Parker, 1969, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291.

■■ The first touchstone of military jurisdiction is military status,[2] "namely, whether the accused in the court-martial proceeding is a person who can be regarded as falling within the term 'land and naval Forces'." Kinsella v. United States ex rel. Singleton, 1960, 361 U.S. 234, 241, 80 S.Ct. 297, 301, 4 L.Ed.2d 268, 273. Status as a member of the Armed Forces must be established not only at the time of the offense, but also at the time of trial. United States ex rel. Toth v. Quarles, 1955, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8. There is no contention that Cole was not subject to the dictates of the Uniform Code at both the time of the alleged use of marijuana and his trial.

■ Given appropriate military status, the court must still inquire into the nature of the offense. Only those offenses which have a peculiar "service connection" are within the constitutional bounds of military jurisdiction. O'Callahan, supra. In formulating this test for military jurisdiction Justice Douglas declined to propound decisive guidelines for the determination of what is and what is not "service connected". However, in Relford v. Commandant, 1971, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102, the Court quantified the O'Callahan holding into twelve identifiable factors which demonstrate a lack of "service connection".[3] These factors broadly de-

2. Civilians are generally not subject to trial by court-martial even if they are dependents of servicemen accompanying their sponsors overseas, Reid v. Covert, 1957, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed. 2d 1148 (capital cases); Kinsella, supra (non-capital cases), or civilian employees of the Armed Forces, McElroy v. United States ex rel. Guagliardo, 1960, 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282. They may be subject to court-martial if they serve in the field with the Armed Forces during a period of a formally-declared, global war, however. Uniform Code of Military Justice, Art. 2(10); United States v. Averette, 1969, 19 U.S.C.M.A. 363, 41 C.M.R. 363.

3. We stress seriatim what is thus emphasized in the holding:
   1. The serviceman's proper absence from the base.
   2. The crime's commission away from the base.
   3. Its commission at a place not under military control.
   4. Its commission within our territorial limits and not in an occupied zone of a foreign country.
   5. Its commission in peacetime and its being unrelated to authority stemming from the war power.
   6. The absence of any connection between the defendant's military duties and the crime.

fine the negative parameters of court-martial jurisdiction.

Just what affirmative elements are necessary and sufficient to establish the requisite nexus between military and offense is not yet clear.[4] The United States Court of Military Appeals has, however, suggested that military jurisdiction extends over the possession and use of marijuana or habit forming narcotics on the theory that the use of these items undermines the readiness of the fighting force. The theory was first expressed by dicta in United States v. Beeker, 1969, 18 U.S.C.M.A. 563, 40 C.M.R. 275. It was later accepted without analysis in United States v. Adams, 1969, 19 U.S.C.M.A. 75, 41 C.M.R. 75.

The rationale which the Court of Military Appeals used to bolster this theory was enunciated in United States v. Williams, 1957, 8 U.S.C.M.A. 325, 24 C.M.R. 135. There the Court of Military Appeals held that, notwithstanding its judicial notice of the "possible, disastrous effects . . . on the health, morale, and fitness for duty of persons in the armed forces," of the use of *habit-forming narcotics,* the panel members must be specifically charged to acquit unless they found the defendant's possession and use of drugs to be prejudicial to the good order and discipline of the service. Thus, the *Beeker* court's reliance on *Williams* was misplaced.

■ It is clear that the on-post possession of marijuana is an offense cognizable by court-martial. Diorio v. McBride, 5 Cir., 1970, 431 F.2d 730. But *any* offense which occurs on a military reservation has an intimate service connection. Relford v. Commandant, *supra*; United States v. Bonavita, 1972, 21 U.S.C.M.A. 407, 45 C.M.R. 181. Cf. Caf-

---

7. The victim's not being engaged in the performance of any duty relating to the military.

8. The presence and availability of a civilian court in which the case can be prosecuted.

9. The absence of any flouting of military authority.

10. The absence of any threat to a military post.

11. The absence of any violation of military property.

One might add still another factor implicit in the others:

12. The offense's being among those traditionally prosecuted in civilian courts.

401 U.S. at 365, 91 S.Ct. at 655, 28 L.Ed.2d at 109.

The *Relford* Court held that a serviceman who commits kidnapping and rape against service-dependent victims on a military reservation is properly triable by court-martial. In so holding, the Court obviated the need to determine whether or not *O'Callahan* must be applied retroactively. Compare Gosa v. Mayden, 5 Cir., 1971, 450 F.2d 753; Schlomann v. Moseley, 10 Cir., 1972, 457 F.2d 1223; with United States ex rel. Flemings v. Chafee, 2 Cir., 1972, 458 F.2d 544.

4. The formidable task of applying *O'Callahan* has been left largely to the expertise of the United States Court of Military Appeals. That court was literally inundated with a mass of cases attacking court-martial jurisdiction in the wake of *O'Callahan.* In a series of opinions the court has, within the confines of the decisional process, given some direction as to what factors are necessary and sufficient to comprise "service connection." Thus, a "service connection" exists within the purview of *O'Callahan* if the offense was committed on a military reservation, United States v. Bonavita, 1972, 21 U.S.C.M.A. 407, 45 C.M.R. 181; if it was a petty offense, United States v. Sharkey, 1969, 19 U.S.C.M.A. 26, 41 C.M.R. 26; if the victim is a serviceman or service-dependent, United States v. Camacho, 1969, 19 U.S.C.M.A. 11, 41 C.M.R. 11; or if the accused flaunts. his status as a military man to perpetrate the crime, United States v. Frazier, 1969, 19 U.S.C.M.A. 40, 41 C.M.R. 40; United States v. Fryman, 1969, 19 U.S.C.M.A. 71, 41 C.M.R. 71. A crime is also service-connected if committed by a serviceman while on assignment beyond the territorial bounds of the United States, Hemphill v. Moseley, 10 Cir., 1971, 443 F.2d 322; United States v. Keaton, 1969, 19 U.S.C.M.A. 64, 41 C.M.R. 64.

While we are normally inclined to accord great weight to the holdings of the Court of Military Appeals, we feel constrained by *O'Callahan* to rule that the court-martial which tried Cole was without jurisdiction.

eteria and Restaurant Workers v. McElroy, 1961, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230.

Our research discloses only one reported opinion which analyzes the question of whether or not a court-martial has jurisdiction to try a case involving the off-post possession or use of marijuana. Moylan v. Laird, D.R.I., 1969, 305 F.Supp. 551. There the Court held that in spite of the fact that the defendant was apprehended with large quantities of marijuana while he was absent without leave from the military, that the mere possession of marijuana by a serviceman off-post and out-of-uniform did not have the requisite service connection.

■ The Government recognizes the authority of *Moylan* but seeks to distinguish the case at bar on the basis that Cole was charged with the *use* of marijuana. The only basis for making this distinction is the Court of Military Appeals' opinion in *Beeker*. But as we have already pointed out, *Beeker* rested on dicta in *Williams* to the effect that habitual narcotics use impairs the readiness of troops for action. It is clear that marijuana does not rise to the level of heroin or other physically addictive, "hard" drugs and the dangers associated with its use—whatever they may be— are not as great as those associated with heroin and the like. See United States v. Watson, 1970, 3 S.S.L.R. 3985 (Military Judge, Ft. Bliss, Texas).[5] Hence,

the purported distinction is without merit. We see no more substantial service connection in the off-duty, off-post use of marijuana than in its possession.

■ In several respects Cole's case against military jurisdiction is stronger than Moylan's. Although both were in civilian attire, Cole was properly absent from his post, whereas Moylan was AWOL. Thus, Cole fits completely and purely within the twelve *O'Callahan* criteria outlined by the Supreme Court in *Relford* (Footnote 3, *supra*). Cole's use and possession of 5.9 grams of marijuana indicate only casual connection with the drug. Moylan's apprehension with 42.5 ounces of marijuana arose in circumstances which could lead one to surmise that he might be pushing drugs. Obviously there is greater danger to military operations from a pusher than from a user. See United States v. Rose, 1969, 19 U.S.C.M.A. 3, 41 C.M.R. 3.

Given the totality of circumstances, it is clear that the alleged use by Cole of marijuana when he was off-post, off-duty, and in civilian clothes did not satisfy the constitutional requirement for "service connection". Accordingly, we must conclude that the court-martial which tried Cole was without jurisdiction. *O'Callahan, supra; Relford, supra; Moylan, supra.* The case will be remanded to the district court for proceedings consistent with this opinion.

Reversed and remanded.

---

5. We do not as Judges undertake to enter the contemporary controversy as to the nature of marijuana or its medico-sociological classification. Rather we give it this characterization because the military in its professional expertise apparently so regards it. See, e. g., *Watson* in which Military Judge Benson made the following finding of fact:

> 10. Prevailing current medical and scientific opinion, while not unanimous, is to the effect that: (a) marijuana is not a narcotic but is classified as a mild hallucinogen; (b) marijuana produces intoxicating effects similar to those of alcohol, depending upon the potency of the marijuana used, the frequency of use, and the individual user himself; (c) use of marijuana

does not lead to physical dependence on marijuana or any narcotic drug, although its use, like the use of tobacco and alcohol, may lead to psychological dependence in some individuals, and may lead to psychotic episodes in predisposed individuals; (d) marijuana does not, *per se*, induce aggressive or criminal activities; (e) marijuana has no currently recognized salutary medical use; and (f) further research is needed in order to determine the long-range effects of marijuana use, since, in many respects, present information concerning marijuana is inadequate from a medical or scientific point of view;

See also Sam v. State, Okl.Cr.App., 1972, 500 P.2d 291.