**UNITED STATES**

v.

**Private (E-2) Morris L. BURSTON, 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, US Army, Headquarters and Headquarters Company, 1st Brigade, 101st Airborne Division (Ambl), Fort Campbell, Kentucky.**

**CM 430548.**

U. S. Army Court of Military Review.

Sentence Adjudged 21 Aug. 1973.

Decided 27 Oct. 1976.

---

Appellate Counsel for the Accused: CPT Barry J. Wendt, JAGC; CPT John R. Osgood, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT William C. Kirk, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## DECISION ON FURTHER REVIEW

COOK, Senior Judge:

This peripatetic case is before this Court for the third time. Upon its initial appearance, it was affirmed without opinion on 13 March 1975. The United States Court of Military Appeals reversed that disposition on 11 July 1975, and in accordance with the order of that Court we directed, on 6 August 1975, that a new review and action be prepared. Our mandate was complied with on 19 December 1975, but as there is an O'Callahan[1] issue present in the case we chose to delay our latest disposition awaiting the United States Court of Military Appeals opinion in United States v. McCarthy, 2 M.J. 26 (24 September 1976).

Appellant was found guilty by a general court-martial, contrary to his pleas, of possession of heroin and of wrongful use of that same drug; both crimes alleged as violations of Article 92, Uniform Code of Military Justice (U.C.M.J.) (10 U.S.C. § 892). His sentence is noted above.

The possession offense was alleged to have occurred at Fort Campbell, Kentucky, whereas, the heroin use was asserted to have been consummated at "lot number 22, Casey's Trailer Park, Oak Grove, Kentucky," a site conceded by the parties to be outside of the territorial jurisdiction of the military. Appellant would have us hold, that the trial court lacked jurisdiction as to both offenses.

I

Appellant's contention concerning lack of jurisdiction as it pertains to the on-post possession of heroin charge is bottomed on the holding in United States v. Castro, 18 U.S.C.M.A. 598, 40 C.M.R. 310 (1969).

The relevant facts in the Castro decision are:

Castro, a serviceman was involved in a traffic accident, in Seattle, Washington. The civilian police at the scene took Castro into custody because, on observing his conduct, they suspected him of drug use. Later he was turned over to the military police, who took him to Madigan General Hospital. On admittance to the Army hospital Castro was searched and a derringer pistol was found in his pants pocket. Subsequently, Castro was brought to trial for a violation of Article 134, U.C.M.J., i. e., carrying a concealed weapon.

The United States Court of Military Appeals stated in its decision that while it did not "doubt that the need to maintain 'the security of a military post' (O'Callahan v. Parker, supra, 395 U.S., at page 274 [89 S.Ct. 1683]) [sic] gives to the Congress of the United States the right to proscribe the charged misconduct when it occurs within the confines of a military establishment," because Castro's presence on-post could not "be considered voluntary in view of the manner it was effected . . . We do not believe that the offense is properly chargeable under the Uniform Code. Since it is an offense cognizable in the courts of the State of Washington, it should be tried

---

1. O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

there. *O'Callahan v. Parker, supra; United States v. Borys*, 18 U.S.C.M.A. 547, 40 C.M.R. 259." [2] While we are bound to apply the rationale of the *Castro* decision in like cases, we do not perceive the requisite factual similarity in the case *sub judice.* Our reading of the record, especially appellant's testimony, leads us to the conclusion that appellant returned to Fort Campbell on 3 July 1973, shortly before the subject heroin was found on his person, entirely of his own volition. We find, therefore, that the criminal act charged against the appellant was accurately described as unlawful possession of heroin on-post.[3]

## II

The allegation concerning the off-post "shooting-up" of heroin by the appellant presents a closer jurisdictional question. Heretofore, in spite of Federal court decisions to the contrary [4] military courts have consistently held under the tutelage of *United States v. Beeker*, 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969), that off-post use of drugs by service personnel is "service-connected" and thus subject to trial by courts-martial.[5] Recently, however, the United States Court of Military Appeals has decided a number of cases involving the *O'Callahan* issue.[6] In several of them the Court has exhorted this Court to apply the *"ad hoc* approach" mentioned by the Supreme Court in the *Relford* opinion.[7] Pertinently, in the recent *McCarthy* opinion the Court abased the precedential value of *United States v. Beeker, supra.*[8] It seems clear that we have been admonished to reexam-

2. *United States v. Castro, supra*, 18 U.S.C.M.A. at pages 600–601; District Judge Tjoflat in *Lyle v. Kincaid*, 352 F.Supp. 81 (M.D.Fla.1972), held that a sailor who was arrested in downtown Jacksonville, Florida, could not be tried by the military for possessing marijuana which was discovered on him during a search conducted at Shore Patrol Headquarters. His opinion states, at page 84, in pertinent part, ". . . this Court holds that a civilian offense may not be converted to a military one when the accused is involuntarily transported onto military property."

3. Although the question of jurisdiction over on-post possession has not been raised by appellant in this case, we are not unaware that such cases may very well be the subject of future litigation. The circumstances under which such drugs are introduced to post has deprived military courts of jurisdiction in some cases. *See United States v. Pieragowski*, 19 U.S.C.M.A. 508, 42 C.M.R. 110 (1970); *United States v. Hughes*, 19 U.S.C.M.A. 510, 42 C.M.R. 112 (1970); *Schroth v. Warner*, 353 F.Supp. 1032 (D.Hawaii 1973); *Lyle v. Kincaid*, 352 F.Supp. 81 (N.D.Fla.1972). *But see Peterson v. Goodwin*, 512 F.2d 479 (5th Cir. 1975); *Cole v. Laird*, 468 F.2d 829 (5th Cir. 1972); *Diorio v. McBride*, 431 F.2d 730 (5th Cir. 1970); *Messina v. Commanding Officer*, 342 F.Supp. 1330 (D.C. Cal.1972). Also consider the unelucidated, but implicit, hypothesis in the Court's holding in *United States v. McCarthy, supra.*

4. *Cole v. Laird, supra; Chastain v. Slay*, 365 F.Supp. 522 (D.Colo.1973).

5. *United States v. Boyd*, 18 U.S.C.M.A. 581, 40 C.M.R. 293 (1969); *United States v. Villamil-Durand*, 46 C.M.R. 1070 (A.F.C.M.R.1973).

6. *United States v. McCarthy*, 2 M.J. 26 (24 September 1976); *United States v. Hedlund*, 2 M.J. 11 (17 September 1976); *United States v. Tucker*, 1 M.J. 463 (3 September 1976); *United States v. Moore*, 1 M.J. 448 (16 July 1976); *United States v. Uhlman*, 24 U.S.C.M.A. 256, 51 C.M.R. 635, 2 M.J. 419 (1976); *United States v. Black*, 24 U.S.C.M.A. 162, 51 C.M.R. 381, 1 M.J. 340 (1976).

7. *Relford v. Commandant*, 401 U.S. 355, at page 369, 91 S.Ct. 649 at page 657, 28 L.Ed.2d 102 (1971). *E. g.* "What *Relford* makes clear is the need for a detailed, thorough analysis of the jurisdictional criteria enunciated to resolve the service-connection issue in all cases tried by court-martial. A more simplistic formula, while perhaps desirable, will not be deemed appropriate by the Supreme Court." *United States v. Moore, supra*, 1 M.J. at page 450. ". . . it is particularly alarming to review on a daily basis trial proceedings and Court of Review decisions which contain nothing more than a perfunctory conclusion that a court has or lacks jurisdiction. While such an approach was undoubtedly fostered by our prior analytical shortcomings in this area, recent decisions of this Court should suggest that we no longer believe *O'Callahan* questions should be treated in a cursory manner." *United States v. McCarthy, supra*, 2 M.J. page 28, note 1.

8. "To the extent that *United States v. Beeker* (citation omitted) suggests a different approach in resolving drug offense jurisdictional questions, it no longer should be considered a viable precedent of this Court." *McCarthy, supra*, 2 M.J. page 29.

ine the question of "service-connection" as it relates to the possession, transfer, sale and use of drugs by servicemen.

The relevant facts of record concerning the appellant's off-post drug use are these:

At approximately 1300 hours on 3 July 1973 appellant met Private Riddle on-post at Fort Campbell, Kentucky. Appellant was in uniform. At Riddle's invitation, appellant rode to Riddle's off-post quarters, a trailer located at Casey's Trailer Park, Oak Grove, Kentucky. Shortly after his arrival appellant took some heroin, a hypodermic needle and a bottle cap from his pocket and asked his hosts if they had something he could use to "tie off his arm with so he could get his vein up." The Riddles loaned appellant a belt for this purpose. Thereafter, appellant cooked the heroin and injected it into his right arm. Either shortly before or shortly after appellant "shot-up," Mrs. Riddle telephoned a Criminal Investigator, Mr. Johnson, located at Fort Campbell and informed him that appellant was at her trailer and in possession of a sizeable quantity of what she believed was heroin. Mrs. Riddle had observed appellant remove several tin-foil packets from his pocket preparatory to his injection. After arrangements were made with Mr. Johnson to rendezvous on-post, the Riddles informed appellant that they were returning to the post to shop and appellant said he would go along in order to check on some laundry. Mr. Johnson apprehended appellant outside the PX grocery and found in his pocket eight packets of heroin, a charred bottle cap and a syringe. This entire saga apparently transpired in a period of no more than two to three hours.

While we will not invoke *Beeker* as *stare decisis,* we find that its reliance upon an observation made in *United States v. Williams,* 8 U.S.C.M.A. 325, 24 C.M.R. 135 (1957), is well taken when applied to the facts of this case and we adopt it for the purpose of aiding us in arriving at our holding. The United States Court of Military Appeals stated in *Williams,* at U.S.C.M.A. 327, at C.M.R. 137:

"We are not unmindful of the disasterous effects occasioned by the wrongful use of narcotics on the health, morale and fitness for duty of persons in the armed forces."

While the Federal courts have on occasion disparaged the uncritical use of this quotation by the United States Court of Military Appeals in its *Beeker* decision,[9] they have never attempted to refute its accuracy when applied to heroin.[10]

We take judicial notice that heroin has especially brutalizing, debasing and vitiating effects upon its users. We note in this regard that the United States Court of Military Appeals must have acted similarly in

---

9. *See Cole v. Laird, supra.* The thrust of the criticism is that its use in *Beeker* was an extension of its reach beyond its grasp. The quote speaks of the use of narcotics, whereas it was used in *Beeker* to denounce use and possession of marijuana, a non-narcotic.

10. Our research reveals the following Federal court cases relevant to this issue:

*Councilman v. Laird,* 481 F.2d 613 (10th Cir. 1973); off-post sale and transfer of marijuana (reversed on jurisdictional grounds in *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975)); *Cole v. Laird,* 468 F.2d 829 (5th Cir. 1972), off-post use of marijuana; *Redmond v. Warner,* 355 F.Supp. 812 (D.Hawaii 1973), off-post possession and sale of barbital, heroin, cocaine, hashish and marijuana; *Chastain v. Slay,* 365 F.Supp. 522 (D.Colo. 1973), off-post use, possession and sale of unspecified type of drugs; *Schroth v. Warner,* 353 F.Supp. 1032 (D.Hawaii 1973), off-post possession of marijuana, meprobamate, methamphetamine, hydrochloride, phenobarbital, and trans-

fer of marijuana, also "on-post" sale of ambar; *Lyle v. Kincaid,* 344 F.Supp. 223 (M.D.Fla.1972) and 352 F.Supp. 81 (M.D.Fla.1972), off-post possession of marijuana; *Moylan v. Laird,* 305 F.Supp. 551 (D.R.I.1969), off-post possession of marijuana; *Reed v. Middendorf,* 383 F.Supp. 488 (C.D.Cal.1974), off-post possession, transfer and sale of amphetamine tablets. In all of the foregoing the Court held that the military courts were without jurisdiction as there was insufficient "service-connection."

*Peterson v. Goodwin,* 512 F.2d 479 (5 Cir. 1975), off-post sale of heroin. Court found that the military had jurisdiction; *Seeger v. Kincaid,* 352 F.Supp. 81 (M.D.Fla.1972), off-post possession of marijuana. Court found sufficient service-connection because Seeger was a resident of the Navy's Drug Rehabilitation Center.

As to on-post offenses, the Federal court cases are cited in footnote 3, *supra.*

*United States v. McCarthy, supra,* as regards the deleterious effects of marijuana when it found military interest pervasive in an off-post sale of marijuana under circumstances that made it appear it would be used by soldiers on-post. The debilitating and injurious effects of heroin are, by several multiples, markedly more severe than marijuana. (*See* comparative chart contained in Drugs of Abuse pamphlet, Drug Enforcement Administration, US Department of Justice, 1974).

The United States Court of Military Appeals in its recent decisions concerning service-connection and offenses has repeatedly enumerated 12 points in the *Relford* opinion distillated from the holding in *O'Callahan.*[11] As stated by Chief Judge Brown of the United States Court of Appeals (Fifth Circuit), "These factors broadly define the negative parameters of court-martial jurisdiction. Just what affirmative elements are necessary and sufficient to establish the requisite nexus between military and offense is not yet clear."[12] The Supreme Court in *Relford* noted specific facts in aid of military jurisdiction that are unrelatable to the enumerated dozen.[13]

11. "We stress seriatim what is thus emphasized in the holding:

1. The serviceman's proper absence from the base.

2. The crime's commission away from the base.

3. Its commission at a place not under military control.

4. Its commission within our territorial limits and not in an occupied zone of a foreign country.

5. Its commission in peacetime and its being unrelated to authority stemming from the war power.

6. The absence of any connection between the defendant's military duties and the crime.

7. The victim's not being engaged in the performance of any duty relating to the military.

8. The presence and availability of a civilian court in which the case can be prosecuted.

9. The absence of any flouting of military authority.

10. The absence of any threat to a military post.

11. The absence of any violation of military property. One might add still another factor implicit in the others:

12. The offense's being among those traditionally prosecuted in civilian courts." (401 U.S. (7) at page 365, 91 S.Ct. at page 655). We also note that *Relford* contains nine other considerations:

"We stress: (a) The essential and obvious interest of the military in the security of persons and of property on the military enclave. . . . (b) The responsibility of the military commander for maintenance of order in his command and his authority to maintain that order. . . . (c) The impact and adverse effect that a crime committed against a person or property on a military base, thus violating the base's very security, has upon morale, discipline, reputation and integrity of the base itself, upon its personnel and upon the military operation and the military mission. (d) The conviction that . . . the power 'To make Rules for the Government and Regulation of the land and naval Forces,' means, in appropriate areas beyond the purely military offense, more than the mere power to arrest a serviceman offender and turn him over to the civil authorities. The term 'Regulation' itself implies, for those appropriate cases, the power to try and to punish. (e) The distinct possibility that civil courts, particularly nonfederal courts, will have less than complete interest, concern, and capacity for all the cases that vindicate the military's disciplinary authority within its own community. . . . (f) The very positive implication in *O'Callahan* itself, arising from its emphasis on the absence of service-connected elements there, that the presence of factors such as geographical and military relationships have important contrary significance. (g) The recognition in *O'Callahan* that, historically, a crime against the person of one associated with the post was subject even to the General Article. . . . (h) The misreading and undue restriction of *O'Callahan* if it were interpreted as confining the court-martial to the purely military offenses that have no counterpart in nonmilitary criminal law. (i) Our inability appropriately and meaningfully to draw any line between a post's strictly military areas and its nonmilitary areas, or between a serviceman-defendant's on-duty and off-duty activities and hours on the post." (401 U.S. at pages 367–369, 91 S.Ct. at pages 656–657).

12. *Cole v. Laird, supra,* at page 831.

13. In *Relford,* after stating that elements 4, 6, 8, 11 and 12 and perhaps 5 and 9 operate in Relford's favor and that elements 1, 2, 3, 7 and 10 were not at hand in Relford's case, the Court continued, "There are still other significant aspects of the Relford offenses: The first victim was the sister of a serviceman who was then properly at the base. The second victim was the wife of a serviceman stationed at the base; she and her husband had quarters on the base and were living there. Tangible property properly on the base, that is, two automobiles, were

We find the following factors in this case make appellant's off-post use of heroin sufficiently service-connected to empower a court-martial to try him:

1. While on-post appellant formulated the intent to use the heroin.
2. Appellant's immediate and voluntary return to post after taking the dose of heroin constituted a threat to the post.
3. Appellant's absence from post was incidental, temporary and informal. He was in reality still subject to an immediate summons to return to duty. Such a situation creates a cognizable connection between the appellant's duties and the crime.
4. Heroin is so incapacitating and enfeebling a drug that its use by a soldier, except under unique circumstances not here present, automatically establishes a connection (albeit disruptive) between his military duties and the crime.

In performing the "careful balancing of the *Relford* factors to determine 'whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and whether the district military interest can be vindicated adequately in civilian courts' *Schlesinger v. Councilman,* 420 U.S. 738, 760 [95 S.Ct. 1300, 43 L.Ed.2d 591] (1975)," [14] we arrive at the same conclusion as did the Circuit Court of Appeals for the Fifth Circuit in *Peterson v. Goodwin, supra* :

> "Heroin addiction among the servicemen at an [Army] base poses a unique threat to the operation of the base. Unless the [soldier] can respond quickly to orders and can operate the complicated weapons and material subject to their use, the base will be unable to fulfill its vital functions in defense of our nation. . . . Heroin addiction presents a serious threat to good order and discipline of our armed forces. A court-martial has power to deal with that threat." (at page 480).

forcefully and unlawfully entered." *United States v. Relford, supra,* 401 U.S. at page 366, 91 S.Ct. at page 656.

The other alleged errors have been considered and are deemed without merit.

The findings of guilty and the sentence are affirmed.

Judge DRIBBEN and Judge DeFORD concur.

14. *United States v. McCarthy, supra,* 2 M.J. page 28.