UNITED STATES, Appellee

v

WILLIAM J. CASTRO, Private,
U. S. Army, Appellant

18 USCMA 598, 40 CMR 310

No. 22,046

September 26, 1969

*Colonel Daniel T. Ghent, Major Dennis R. Hunt, Captain Thomas R. Maher,* and *Captain Eugene W. Murphy, Jr.,* were on the pleadings for Appellant, Accused.

*Lieutenant Colonel David Rarick, Major Edwin P. Wasinger, Major Warren W. Kaufman, Major R. Kevin McHugh,* and *Captain Benjamin G. Porter* were on the pleadings for Appellee, United States.

FERGUSON, Judge:

The accused was convicted by general court-martial of four specifications of being absent without leave, two specifications of violation of a lawful general regulation by unlawful possession of barbiturates, and one specification of unlawfully carrying a concealed weapon, in violation of Articles 86, 92, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 892, and 934, respectively. We granted review to determine the validity of the accused's conviction in light of the Supreme Court's decision in O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969).

The offense of being absent without leave is not within the purview of our grant of review as its "service connection" is unquestioned. O'Callahan v Parker, supra.

The general regulation which the accused allegedly violated, AR 600–50, paragraph 18.1, dated June 29, 1966, amended May 15, 1968, provides in pertinent part as follows:

". . . *a.* Except for official governmental or authorized medical purposes, military personnel shall not possess, use, sell or transfer depressant, stimulant, or hallucinogenic drugs nor shall they introduce such drugs onto any Army installation or other Government property under Army jurisdiction. The term 'depressant, stimulant, or hallucinogenic drug' means any drug which contains—

"(1) Any quantity of barbituric acid or any of the salts of barbituric acid; or any derivative of barbituric acid which has been designated under section 502(d) of the Federal Food, Drug, and Cosmetic Act, as amended (21 U. S. C. 352 (d)), as habit-forming.

"(2) Any quantity of amphetamine or any of its optical isomers; any salt of amphetamine or any salt of an optical isomer of amphetamine; or any substance which the Secretary of Health, Education, and Welfare, after investigation, has found to be, and by regulation designated as, habit-forming because of its stimulant effect on the central nervous system."

The record of trial contains a stipulation of fact relating to these offenses:

"The accused went absent without leave on 12 April 1968 and remained so absent until 16 May 1968. On that date Sergeant William B. Walker and his partner, RD2 Toodvine, of the Armed Forces Police, apprehended the accused for absence without leave. At the time of the apprehension Sergeant Walker searched the accused and found in his wallet a cellophane bag containing three small pink pills. Chemical analysis of these pills by the Criminal Investigation Laboratory at Fort Gordon, Georgia, revealed that they were composed of amphetamine, a nervous system stimulant and phenobarbital, a sedative and hypnotic.

"The accused was absent without leave from 20 May 1968 until 19 June 1968 at which time he surrendered himself to his unit.

"On 8 July 1968 the accused again went absent without leave, remaining so absent until approximately 0745 hours, 6 August 1968, at which time the accused was involved in a traffic accident in Seattle, Washington. Seattle Police Officers investigating the accident noticed the accused acting in a strange manner. Officer C. G. Peterson searched the accused's wallet and found a cellophane bag containing traces of white powder which chemical analysis revealed was methamphetamine.

"The accused was taken from the accident to King County Hospital and subsequently turned over to the Armed Forces Police who took him to Madigan General Hospital where treatment for a suspected drug reaction was administered. At all times between the accused's apprehension

**599**

at the scene of the accident in Seattle and his admittance to Madigan General Hospital at Tacoma, Washington, the accused was in custody of either civilian or military authorities. Specialist Six Carl A. Hunt undressed the accused upon his admittance to Madigan General Hospital and routinely inventoried. the clothing and items found therein. In the accused's pants pocket Specialist Hunt found 107 orange colored pills and a .22 caliber Derringer pistol. Chemical analysis of the pills revealed that they were composed of amphetamine and amobarbital.

"The accused remained in the hospital until 8 August when he was released to his unit. On 9 August the accused went absent without leave and remained away until 14 October 1968 when he surrendered to military control." [Prosecution Exhibit 1.]

In our opinion, the existence of a general regulation declaring specified conduct as punishable, does ▊▊ not, standing alone, *per se* confer jurisdiction on a court-martial to try one accused of its violation. The conduct proscribed therein must be "service connected" within the meaning of O'Callahan v Parker, supra. The reason is obvious, for to hold otherwise would be tantamount to giving to the military authority to regulate and punish conduct of servicemen in excess of that granted to Congress under Article I, section 8, clause 14 of the Constitution to "make Rules for the Government and Regulation of the land and naval Forces." Congressional power to regulate in this area is limited to those matters which are "service connected." O'Callahan v Parker, supra.

In this case, however, the regulation forbids the unlawful possession of certain drugs, specifically barbiturates and amphetamines, both of which were found on the accused at the time he was taken into military custody for being absent without leave. Unlawful possession and use of such drugs is, in our opinion, detrimental to the "health, morale and fitness for duty of persons

in the armed forces" (United States v Williams, 8 USCMA 325, 327, 24 CMR 135), and the regulation proscribing such conduct, whether on or off base, relates to a matter that is clearly "service connected." O'Callahan v Parker, supra; cf. United States v Beeker, 18 USCMA 563, 40 CMR 275. These offenses are, therefore, properly triable by court-martial.

The charge of unlawfully carrying a concealed weapon (a .22 caliber Derringer pistol) under Article 134, Code, supra, the Additional Charge, presents a different problem. While it is true that the accused's possession of the weapon became known after the accused had entered Madigan General Hospital, Tacoma, Washington, a United States Army facility, his presence there cannot be considered voluntary in view of the manner in which it was effected.

In United States v Thompson, 3 USCMA 620, 14 CMR 38, we held that carrying a concealed weapon was a violation cognizable under Article 134, Code, supra, on the ground that it was conduct of a nature to bring discredit upon the armed forces. And, in United States v Tobin, 17 USCMA 625, 38 CMR 423, we adhered to this holding when we rejected a defense contention of error by the law officer's denial of a request to instruct on this issue in accordance with the law of the State of Mississippi. In *Tobin*, the State law provided that one may lawfully carry a concealed weapon if the bearer reasonably believes he needs it to protect himself. These decisions need not detain us, however, as they were both handed down prior to the Supreme Court's decision in O'Callahan v Parker, supra, and are not applicable in light of the standards set forth therein.

We have no doubt that the need to maintain "the security of a military post" (O'Callahan v Parker, supra, 395 US, at page 274) gives to the Congress of the United States the right to proscribe the charged misconduct when it occurs within the confines of a military establishment. Under the circum-

stances of this case, however, we do not believe that the offense is properly chargeable under the Uniform Code. Since it is an offense cognizable in the courts of the State of Washington, it should be tried there. O'Callahan v Parker, supra; United States v Borys, 18 USCMA 547, 40 CMR 259.

The conviction of the accused under the Additional Charge is reversed and the charge and its specification are ordered dismissed. The record of trial is returned to the Judge Advocate General of the Army. The Court of Military Review may reassess the sentence on the basis of the remaining findings of guilty.

Judge DARDEN concurs.

QUINN, Chief Judge (concurring in part and dissenting in part):

In United States v Tobin, 17 USCMA 625, 631, 38 CMR 423, we held that "carrying a concealed weapon . . . constitute[s] conduct to the prejudice of good order and discipline, quite without regard to local law." O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969), did not change that principle. See United States v Beeker, 18 USCMA 563, 40 CMR 275. On the basis of *Tobin* and my opinion in United States v Borys, 18 USCMA 547, 40 CMR 259, I would affirm the concealed weapon charge as well as the dangerous drug charges.