UNITED STATES, Appellee

v

GEORGE S. REGO, Airman First Class,
U. S. Air Force, Appellant

19 USCMA 9, 41 CMR 9

No. 21,661

October 10, 1969

Colonel Joseph E. Krysakowski and Major William H. Seckinger were on the pleadings for Appellant, Accused.

Colonel James R. Thorn was on the pleadings for Appellee, United States.

## Opinion of the Court

DARDEN, Judge:

On his plea of guilty, the accused was convicted by a special court-martial of housebreaking and larceny, in violation of Articles 130 and 121, Uniform Code of Military Justice, 10 USC §§ 930 and 921, respectively.

The unlawful breaking involved the residence of a fellow airman located in Midwest City, Oklahoma, near Tinker Air Force Base, and the larceny was of various articles of property, including a 12-gauge shotgun and two rifles, belonging to the same airman. The accused and the victim worked in the same section and the same building at Tinker Air Force Base. Through this association as members of the armed forces, the accused learned that the victim would be away for the weekend and he broke into his home during his absence. After preliminary investigation by Midwest City police, the matter was referred to the Air Force's Office of Special Investigations, which conducted the investigation that resulted in the accused's trial and conviction on the charges indicated.

The accused now contends that, under O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969), the court-martial did not have jurisdiction over the offenses of which he stands convicted. In United States v Borys, 18 USCMA 547, 40 CMR 259, we considered the meaning and application of the constitutional limitation on court-martial jurisdiction promulgated by the Supreme Court in the O'Callahan case. Upon consideration of the Supreme Court's indication that "thefts from other soliders" are "peculiarly military crimes" (O'Callahan, supra, footnotes 14 and 19), and for the reasons set out in Borys, the exercise of court-martial jurisdiction in this case was proper.

**9**

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

As my brothers note, the charges of housebreaking and larceny, of which the accused was convicted by special court-martial, occurred off post and in the civilian community, and were committed by the accused while in an off-duty status. The residence involved was that of another serviceman. It is this latter circumstance, *the theft from another serviceman,* coupled with the fact that the accused learned through their common association as members of the armed forces that the victim would be away for the weekend, which the majority contend is sufficient to clothe a court-martial with jurisdiction to try this accused. Footnotes 14 and 19 of O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969), are cited in support of their view. I disagree.

The essence of the holding in O'Callahan v Parker, supra, is contained in the following statement from *O'Callahan*:

"We have concluded that the crime to be under military jurisdiction must be *service connected,* lest 'cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger,' as used in the Fifth Amendment, be expanded to deprive every member of the armed services of the benefits of an indictment by a grand jury and a trial by a jury of his peers. The power of Congress to make 'Rules for the Government and Regulation of the land and naval Forces,' Art. I, § 8, cl. 14, need not be sparingly read in order to preserve those two important constitutional guarantees." [*Id.,* 395 US, at page 272.] [Emphasis supplied.]

The critical question in this case is whether the offense of which the accused was convicted, including the circumstances surrounding its commission, was "service connected." The term "service connected" was not precisely defined in *O'Callahan;* rather, the Court, in its determination that O'Callahan's offenses were not "service connected" listed a number of factors which were not present in that case, implying thereby that court-martial jurisdiction might properly attach in those cases where one or more of these circumstances was found. Of particular importance to this case is the Court's finding, in *O'Callahan,* that the person attacked by O'Callahan *was not performing any duties relating to the military.*

In the case at bar, the owner of the stolen property and the resident of the house which was improperly entered was a serviceman. In that capacity, while *he* may be said to have duties relating to the military, the offenses were not directed against him personally, and, therefore, did not affect him in the performance of his military duty. Rather, the offenses were perpetrated against his off-base residence and personal property. The distinction here is vital for the degree of interest or control, which the military may have in or over the person of a serviceman while off base, does not extend to his off-base, nonmilitary property or residence. The latter is under the exclusive jurisdiction of State and local authorities. Military authorities, in order to conduct a search of an off-base residence or structure, must "obtain a warrant to search from the appropriate magistrate." United States v Garlich, 15 USCMA 362, 367, 35 CMR 334. Cf. United States v Conlon, 14 USCMA 84, 33 CMR 296.

I find it difficult to believe that there is an identifiable military interest in the off-base residence and property of a serviceman, when this Court has already held that such interest is non-existent where an offense has been committed off base against a serviceman's dependents. United States v Borys, 18 USCMA 547, 40 CMR 259; United States v Henderson, 18 USCMA 601, 40 CMR 313.

Footnotes 14 and 19 in *O'Callahan* do indeed refer to thefts from other sol-

diers as having been held to have some special military interest. But the instances referred to therein are not specifically documented and for aught we know these offenses may well have occurred in a time of war or *on base* where the military interest is apparent. See United States v Crapo, 18 USCMA 594, 40 CMR 306; United States v Smith, 18 USCMA 609, 40 CMR 321; United States v Paxiao, 18 USCMA 608, 40 CMR 320; United States v Williams, 18 USCMA 605, 40 CMR 317.

Since the courts of the State of Oklahoma are open and have cognizance of the charged offenses, I do not believe that the court-martial had jurisdiction in this case. O'Callahan v Parker; United States v Borys, both supra.

I would set aside the findings of guilty and the sentence and order the charges dismissed.