UNITED STATES, Appellee

v

RONALD P. PLAMONDON, Private First Class, U. S. Army; CHARLES HANSEN, Private First Class, U. S. Army; and STEWART D. COTY, Specialist Four, U. S. Army, Appellants

19 USCMA 22, 41 CMR 22

No. 21,569

October 10, 1969

*Colonel Daniel T. Ghent, Major David J. Passamaneck, Captain Dennis R. Hunt,* and *Captain Thomas R. Maher* were on the pleadings for Appellants, Accused.

*Lieutenant Colonel David Rarick, Major Edwin P. Wasinger,* and *Captain Mark L. Rosen* were on the pleadings for Appellee, United States.

## Opinion of the Court

DARDEN, Judge:

In accordance with their pleas of guilty, these accused were convicted of robbery and conspiracy to commit robbery, in violation of Articles 122 and 81, Uniform Code of Military Justice, 10 USC §§ 922 and 881, respectively. Additionally, Plamondon and Hansen were convicted of carrying concealed weapons, in violation of Article 134, Code, supra, 10 USC § 934. Because all of the offenses charged occurred in Killeen, Texas, we granted review of this case to consider the validity of the court-martial's jurisdiction over these charges in light of the

Supreme Court's decision in O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969).

The record reflects that on December 25, 1967, Thomas G. Lemley was accosted on a street of Killeen and robbed of $5.00 by Coty and Hansen. On December 30, 1967, all these accused met and agreed to look for someone to rob that night. Pursuant to this agreement they stopped, threatened, and robbed James W. Lott, Jr., of a wallet and $9.00. With the aid of a description given by Lott, the three accused were thereafter apprehended by the Killeen police department. At the time of their

22

arrest Plamondon and Hansen had pistols in their possession. The three were identified by Lott as his assailants. Lemley similarly identified Coty and Hansen.

The accompanying Article 32 investigation discloses that both Lemley and Lott were servicemen stationed at Fort Hood, Texas. This fact was apparently not known by the accused.

Theft by one soldier from another is triable by court-martial. O'Callahan v Parker, supra, footnotes 14 and 19; United States v Rego, 19 USCMA 9, 41 CMR 9; United States v Camacho, 19 USCMA 11, 41 CMR 11; United States v Cook, 19 USCMA 13, 41 CMR 13. The rationale of those cases is appropriate and controlling here. We believe, consequently, that there is an adequate basis to sustain court-martial jurisdiction over the crimes of robbery and conspiracy to commit robbery.

On the other hand, carrying concealed weapons in the circumstances present here is not an offense properly chargeable under the Uniform Code of Military Justice. United States v Castro, 18 USCMA 598, 40 CMR 310.

Accordingly, as to Coty the decision of the board of review is affirmed. As to both Plamondon and Hansen, their conviction under Charge III is reversed and the charge and specification are set aside and ordered dismissed. The record of trial is returned to the Judge Advocate General of the Army. The Court of Military Review may reassess the sentence of Plamondon and Hansen on the basis of the remaining findings of guilty.

QUINN, Chief Judge (concurring in part and dissenting in part):

I would also affirm the findings of guilty of Charge III and its specification.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

Each of the accused was convicted, on his plea of guilty, of charges of robbery and conspiracy to commit robbery, in violation of Articles 122 and 81, Uniform Code of Military Justice, 10 USC §§ 922 and 881, respectively. In addition, Plamondon and Hansen were also convicted of a charge of carrying a concealed weapon, in violation of Article 134, Code, supra, 10 USC § 934. Since all of the offenses were committed in the city of Killeen, Texas, we granted review to determine the validity of their convictions in light of the Supreme Court's decision in O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969).

In view of their pleas, the Government presented no witnesses. However, the circumstances surrounding the commission of these offenses were revealed to the court by trial counsel when he read from three stipulations of fact (Prosecution Exhibits 1, 2, and 3) entered into by each accused. These stipulations are as follows:

Prosecution Exhibit 1.

"It is hereby stipulated by and between trial counsel, defense counsel, and the accused Specialist Four (E-4), Stewart D. Coty, RA 16 893 114, that the following are the true facts in the case presently being tried:

"1. That on or about 25 December 1967 while Thomas G. Lemley was walking north on 2d Street near Avenue F in Killeen, Texas when he was approached by SP4 Stewart D. Coty and Charles Hansen who demanded that he turn over to them his money. He was threatened by them with the use of force if he did not comply.

"2. That Lemley was put in fear of bodily injury by the threats of injury to his person by SP4 Coty and Hansen.

"3. That SP4 Coty and Hansen took five dollars ($5.00) from Lemley.

"4. That on or about 30 December 1967 while at the Pepper Club in Harker Heights, Texas, SP4 Coty, Charles Hansen and Ronald P. Plamondon agreed to look for someone to rob that night.

**23**

"5. That pursuant to said agreement, on or about 31 December 1967 they observed James W. Lott, Jr. walking north on 4th Street near Avenue G in Killeen, Texas. Lott was stopped by Coty, Hansen and Plamondon. SP4 Coty demanded that Lott give him his wallet and was threatened with the use of force if he did not comply.

"6. That Lott heard a pistol being cocked by one of the other men and then felt a gun at his neck and was put in fear of bodily harm.

"7. That SP4 Coty was apprehended with Hansen and Plamondon by the Killeen Police Department on 31 December 1967 with the help of a description of him supplied to the police by Lott.

"8. That Lott identified SP4 Coty at the Kileen Police Department, the morning after Lott was robbed, as one of the three men that robbed him. Lemley also identified SP4 Coty that morning as one of the two men that robbed him on 25 December 1967."

Prosecution Exhibit 2.

"It is hereby stipulated by and between trial counsel, defense counsel, and the accused Private First Class (E-3), Ronald P. Plamondon, US 51 589 279, that the following are the true facts in the case presently being tried:

"1. That on or about 30 December 1967 while at the Pepper Club in Harker Heights, Texas, PFC Ronald P. Plamondon, Charles Hansen and Stewart D. Coty agreed to look for someone to rob that night.

"2. That pursuant to said agreement, on or about 31 December 1967 they observed James W. Lott Jr. walking north on 4th Street near Avenue G in Killeen, Texas. Lott was stopped by PFC Plamondon, Charles Hansen and Stewart D. Coty. One of them demanded that Lott give him his wallet and was threatened with the use of force if he did not comply.

"3. That Lott heard a pistol being cocked and then felt a gun at his neck and was put in fear of bodily harm by Plamondon, Hansen and Coty.

"4. That Lott took out his wallet and nine dollars ($9.00) was taken from his person by PFC Plamondon, Hansen and Coty.

"5. That PFC Plamondon was apprehended by the Killeen Police Department on 31 December 1967 with the help of a description of him supplied to the police by Lott. At the time of his arrest Plamondon was searched by the arresting officer and a .38 caliber pistol was found in his possession.

"6. That PFC Plamondon did unlawfully carry a concealed weapon, to wit: a .38 caliber pistol on 31 December 1967.

"7. That Lott identified PFC Plamondon at the Killeen Police Department the morning after the crime as one of the three men that robbed him."

Prosecution Exhibit 3.

"It is hereby stipulated by and between trial counsel, defense counsel, and the accused Private First Class (E-3), Charles Hansen, US 56 405 945, that the following are the true facts in the case presently being tried:

"1. That on or about 25 December 1967, while Thomas G. Lemley was walking north on 2d Street near Avenue F in Killeen, Texas, he was approached by PFC Charles Hansen and Stewart D. Coty, who demanded that he turn over to them his money, and, that Lemley was threatened with the use of force if he did not comply.

"2. That Lemley was put in fear of bodily harm by the threat of injury to his person by PFC Hansen.

"3. That PFC Hansen and Coty took five dollars ($5.00) from Thomas G. Lemley.

"4. That on or about 30 December 1967 while at the Pepper Club in

Harker Heights, Texas, PFC Hansen, Ronald P. Plamondon and Stewart D. Coty agreed to look for someone to rob that night.

"5. That pursuant to said agreement, on or about 31 December 1967, they observed James W. Lott, Jr. walking north on 4th Street near Avenue G in Killeen, Texas. Lott was stopped by PFC Hansen, Ronald Plamondon and Stewart D. Coty. One of them demanded that Lott give him his wallet and was threatened with the use of force if he did not comply.

"6. That Lott heard a pistol being cocked and then felt a gun at his neck and was put in fear of bodily harm.

"7. That PFC Hansen was apprehended by the Killeen Police Department on 31 December 1967 with the help of a description of the accused supplied to the police by Lott.

"8. That during the commission of the robbery of Lott, PFC Hansen did have in his possession and did unlawfully carry a concealed weapon, to wit: a Beretta automatic pistol.

"9. That Lott, identified PFC Hansen at the Killeen Police Department the morning after Lott was robbed, as one of the three men that robbed him. Lemley also identified PFC Hansen that morning as one of the two men that robbed him on 25 December 1967."

There is no evidence in the material set forth above or in the evidence presented in extenuation or mitigation that would indicate that these offenses were in any manner "service connected" within the meaning of that term as expressed in O'Callahan v Parker, supra. However, a review of the Article 32 investigation disclosed that each of the robbery victims, Lemley and Lott, were servicemen also stationed at Fort Hood, Texas, as were the accused. The victims were apparently unacquainted with any of the accused as in their statements to the Killeen police they were only able to give descriptions of their attackers. Under these circumstances, I believe that the status of the victims of the robbery as servicemen is an insufficient *nexus* to sustain the exercise of military jurisdiction over these offenses.

My brothers cite footnotes 14 and 19 of O'Callahan v Parker, supra, and the majority opinions in United States v Rego, 19 USCMA 9, 41 CMR 9; United States v Camacho, 19 USCMA 11, 41 CMR 11; and United States v Cook, 19 USCMA 13, 41 CMR 13, as support for their holding that theft from another soldier is triable by court-martial. I dissented in the cited cases and do likewise in this case for the reasons set forth therein. Robbery and conspiracy to commit robbery *in the civilian community* are distinctly civilian offenses. The *status* of the victims as servicemen was a mere happenstance and cannot, in my opinion, operate to confer jurisdiction in a court-martial and thereby operate to deprive the accused of their constitutional right to indictment and trial by jury.

Since the offenses in this case were cognizable in the State court of Texas and "did not involve any question of the flouting of military authority, the security of a military post, or the integrity of military property," they were not triable by military court-martial. O'Callahan v Parker, supra, 395 US, at page 274. In order for a crime to be cognizable by court-martial, it "must have been committed under such circumstances as to have directly offended against the government and discipline of the military state." Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, pages 723–724. (See footnote 19, O'Callahan v Parker, supra.) Such is not the case here. Cf. United States v Borys, 18 USCMA 547, 40 CMR 259; United States v Prather, 18 USCMA 560, 40 CMR 272; United States v Castro, 18 USCMA 598, 40 CMR 310; United States v Henderson, 18 USCMA 601, 40 CMR 313; United States v Armes, 19 USCMA 15, 41 CMR 15.

In *Borys* and *Henderson,* the victims of the offenses charged in those cases were dependents of servicemen; and, in *Armes,* the victim was a retired officer who was employed on base. Since in each of these cases the charged offenses occurred off base, a majority of this Court held that the court-martial lacked jurisdiction to proceed. I find an insufficient difference between these cases and the case at bar to justify a holding that there is present in the charged offenses the military interest or "service connection" which the Supreme Court held was necessary to vest a court-martial with jurisdiction. O'Callahan v Parker, supra.

I concur in the decision to reverse and set aside the convictions of Plamondon and Hansen for the offense of carrying a concealed weapon (Charge II). I dissent to the affirmance of the convictions of all three accused for the offenses of robbery and conspiracy to rob. I would reverse all of the convictions and the sentences and order the charges and their specifications dismissed.