UNITED STATES, Appellee

v

JAMES W. TEASLEY, Private, U. S. Army, Appellant

22 USCMA 131, 46 CMR 131

No. 25,792

February 2, 1973

*Captain Thomas G. Parachini* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick, Captain Francis X. Gindhart, Captain Peter M. Davenport, Captain Howard M. Schmeltzer,* and *Captain Robert H. Dickman.*

*Captain M. Douglas Deitchler* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Captain Richard L. Menson, Captain Benjamin P. Fishburne, III,* and *Captain Stan L. Spangler.*

## Opinion of the Court

QUINN, Judge:

Among other offenses, the accused was convicted of having "wrongfully . . . in his possession narcotic paraphernalia," in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934 (Additional Charge III and its specification). We granted review to consider whether the offense, which was committed in the civilian community, was triable by court-martial. See O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969) and United States v Borys, 18 USCMA 547, 40 CMR 25 (1969).

On August 13, 1970, in the restroom of a civilian bar in Odenton, Maryland, that had been posted as off limits to military personnel, the accused was observed using a hypodermic syringe to inject a white substance, believed to be "smack" [heroin], into his arm. Contrary to a post regluation as to attire while off-post in an off-duty status, the accused was wearing fatigues.

As a result of the decision of the United States Supreme Court in the *O'Callahan* case, supra, conduct defined as criminal by the Uniform Code of Military Justice is not necessarily

triable by court-martial. If the offense is committed in the civilian community and is also cognizable as a crime in the civilian criminal courts, its trial by court-martial depends upon whether it has military significance or is service connected. In United States v Beeker, 18 USCMA 563, 40 CMR 275 (1969) we held that while the possession and use of marihuana and narcotics are civilian type offenses, they have "special military significance" so that possession and use of those substances by military personnel are offenses triable by court martial, as violations of military law, even though the possession or use occurs off base. Our view of the circumstances justifying that decision has not gone unchallenged in other courts. Cole v Laird, 468 F2d 829 (5th Cir 1972); Moylan v Laird, 305 F Supp 551 (DRI 1969). The contrary arguments have not persuaded us that we were wrong.

Anticipating our adherence, appellate Government counsel contend that "it strains credulity to argue that possession of the implement used for injection of the substance does not have an overriding military significance or service connection." The contention has surface appeal, but it does not take account of the difference between possession or use of a prohibited substance that has inherent and direct capability of affecting "the health, morale and fitness for duty" of military personnel, on or off base, United States v Williams, 8 USCMA 325, 327, 24 CMR 135, 137 (1957), and possession of an instrument or device that does not itself affect health or good order and discipline, but merely has a potential to bring about that result. The significance of the difference is apparent in comparison of the offense of carrying a concealed weapon with committing an assault upon another with that weapon. In United States v Plamondon, 19 USCMA 22, 41 CMR 22 (1969), we held that the robbery of a service person, although committed in the civilian community, is triable by court-marital, but that carrying a concealed weapon is not. Certainly, a concealed weapon can be used, and in *Plamondon* was actually used, to commit an assault upon another service person. Neither the weapon's potential for use, nor its actual use to accomplish the assault, was deemed sufficient to incorporate into the gun offense the military significance of the assault offense. Two offenses may be connected in time and place, but the trial of each by court-martial depends upon whether that particular offense is itself service connected. Another application of that principle appears in United States v Castro, 18 USCMA 598, 40 CMR 310 (1969). There, the accused stole an automobile and later transported it in interstate commerce. Since the theft was committed on a military base, it had a sufficient military connection to be triable by court-martial. However, the military significance of the theft offense was not incorporated into the related transportation offense so as to make it, too, triable by court-martial as a violation of the crimes and offenses provision of Article 134 of the Uniform Code. A syringe can be used for injection of a narcotic, but that circumstance does not invest possession of a syringe, while in the civilian community, with the same kind of direct and immediate effect upon the health, morale, and good order and discipline of the possessor's armed force, as possession of the drug. Since the act charged was committed in the civilian community, had no independent service significance, and was an offense in the civilian community cognizable in the courts of Maryland, it could not be tried by court-martial. United States v Borys, supra; United States v Morley, 20 USCMA 179, 43 CMR 19 (1970).

Our conclusion as to the nontriable nature of the offense makes it unnecessary to consider whether, absent an appropriate regulation, possession of an instrument capable of being used to inject a prohibited substance constitutes a violation of Article 134 of the Uniform Code. See United States v Tee, 20 USCMA 406, 43 CMR 246 (1971). Compare United States v Giordano, 15 USCMA 163, 35 CMR 135 (1964).

The decision of the Court of Military Review as to Additional Charge II is reversed. The findings of guilty of Additional Charge II and its specification are set aside and the charge is ordered dismissed. The record of trial is returned to the Judge Advocate General of the Army for submission to the Court of Military Review for reassessment of the sentence on the basis of the remaining findings of guilty.

Chief Judge DARDEN concurs.

Judge DUNCAN concurs in the result.