UNITED STATES, Appellee

v

ALBERT SEXTON, JR., Private First Class, U. S. Marine Corps,
Appellant

No. 27,900

June 7, 1974

*Lieutenant Walter A. Smith, Jr.,* JAGC, USNR, argued the cause for Appellant, Accused.

*Lieutenant Stephen M. Hackerman,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel G. L. Bailey,* USMC.

## OPINION OF THE COURT

QUINN, Judge:

Under the provisions of Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867(b)(2), the Judge Advocate General of the Navy has certified the record of trial for review of the correctness of the Court of Military Review's determination that an "off-base sale of marijuana to a serviceman informer is an offense triable by court-martial."

In O'Callahan v Parker, 395 US 258 (1969), the United States Supreme Court considered the constitutional limitations on court-martial jurisdiction. It determined that, while conduct of a service member may violate the Uniform Code of Military Justice, the offender cannot be tried by court-martial if the offense was committed on American territory outside a military installation and is an offense under the civilian criminal law which is cognizable in a civilian court, unless the offense also had military significance or a military connection. The Court noted various circumstances bearing upon the presence or absence of military significance in the wrongful act, but it did not decide which of these, alone or in combination, would establish the constitutional basis for military jurisdiction. Cf. Relford v Commandant, 401 US 355 (1971). Thereafter, civilian and military courts have addressed the problem.

As to the present offense of sale of a prohibited substance, this Court has held that an off-base sale by one member of the military to another service person has sufficient service connection or military significance to justify court-martial jurisdiction. Rainville v Lee, 22 USCMA 464, 47 CMR 554 (1973); United States v Rose, 19 USCMA 3, 41 CMR 3 (1969). Cf. United States v Morley, 20 USCMA 179, 43 CMR 19 (1970) (sale to a civilian consummated in the civilian community). Appellate defense counsel contend that *Rainville* is inapplicable because of the "peculiar facts of this particular case." The contention rests largely upon decisions by a number of civilian courts, of which Councilman v Laird, 481 F2d 613 (10th Cir 1973), *cert. granted sub nom.* Schlesinger v Councilman, 414 US 1111 (1973), is typical, and United States v Blancuzzi, 46 CMR 922 (NCMR 1972).

In *Councilman,* the Court of Appeals pointed out that one of the factors, adumbrated by the United States Supreme Court in *O'Callahan* and clarified in *Relford,* 401 US at 365, indicating the absence of military significance was that the victim was not "engaged in the performance of any duty relating to the military." The Court of Appeals reasoned that an agent of the Army's Criminal Investigation Division, although stipulated to be "acting on duty in his capacity as an undercover agent" when he purchased a drug from the accused, was not "engaged outwardly in the performance of any duty relating to the military" within the meaning of the *O'Callahan* reference. 481 F2d at 614. With due respect to the Court of Appeals, we do not regard public demonstration of the performance of military duty as essential to military jurisdiction.

▮ The question of the existence of military jurisdiction in instances of the kind presented by this appeal is substantially similar to the question of federal jurisdiction in the case of assault upon a federal officer. In the latter instance, whether, at the time of an assault upon him, the federal officer gives the appearance of being a federal officer, or whether he is known to his assailant to be a federal officer, is immaterial to federal jurisdiction. Burke v United States, 400 F2d 866 (5th Cir 1968), *cert. denied,* 395 US 919 (1969). That concept is applicable with regard to court-martial jurisdiction. We have consistently held that as to an offense affecting or involving another member of the military services jurisdiction exists, whether or not the overt circumstances apprised the accused of the fact that he was dealing with a military person. United States v Camacho, 19 USCMA 11, 41 CMR 11 (1969).

▮ We are also unconvinced that the Court of Appeals in *Councilman* was correct in its assumption that for court-martial jurisdiction to exist the "victim" of the accused's offense must be one who has suffered personal harm as a result of the crime. Many offenses, in both the military and civilian community, may

directly involve or affect an individual who is not personally harmed; "victimless" offenses, in the sense used by the Court of Appeals, are still crimes in that the harm is to the community. *Councilman* and similar cases, therefore, do not convince us that *Rainville* is inapplicable to this case. In any event, even if *Councilman* is right in its interpretation of *O'Callahan,* the transaction in this case is still subject to military jurisdiction.

■■ When all essential acts comprising an offense are committed on a military installation, military jurisdiction exists. Relford v Commandant, supra; United States v Smith, 18 USCMA 609, 40 CMR 321 (1969); United States v Crapo, 18 USCMA 594, 40 CMR 306 (1969). Jurisdiction also exists when some essential acts are committed in the civilian community but others occur on a military installation. United States v Rego, 19 USCMA 9, 41 CMR 9 (1969); United States v Crapo, supra; United States v Harris, 18 USCMA 596, 40 CMR 308 (1969). Here, the accused indicated that he made the "deal" to sell two bags of marihuana to the undercover informant on May 9, the "night before" he turned over the bags to the informant; at the time, he received $40 from the informant. The next day, when the accused "got off work," the informant picked him up and "drove [him] out" to Carl's Auto Storage, where the accused had stored the marihuana in the trunk of a car. The accused removed two bags from the trunk and gave them to the informant. In our opinion, this testimony establishes that the agreement for sale of the marihuana, the transfer of the purchase price to the accused, and the beginning of the trip that led directly and immediately to accused's transfer of physical possession of the marihuana took place at Camp Lejeune. These integral aspects of the offense substantially connect the sale with the military and satisfy the constitutional requirement for court-martial jurisdiction. United States v Harris, supra.

The certified question is answered in the affirmative, and we affirm the decision of the Court of Military Review.

Senior Judge FERGUSON concurs.

DUNCAN, Chief Judge (concurring in the result):

A majority of this Court has consistently held that service persons' use or possession of marihuana beyond the limits of a military reservation is service connected. Rainville v Lee, 22 USCMA 464, 47 CMR 554 (1973); United States v Rose, 19 USCMA 31, 41 CMR 3 (1969); United States v Castro, 18 USCMA 598, 40 CMR 310 (1969); United States v Beeker, 18 USCMA 563, 40 CMR 275 (1969).

Even though I have serious concern over the correctness of the theory of service connection, I am persuaded that this is an instance where adherence to the established precedent is most beneficial to the maintenance of fairness and the good order of our system.

Using the above cited decisions of this Court as the starting line, a drug seller cannot transfer possession to another service person and defend on the basis of the fact that the buyer's use of the contraband will not have any effect on the military since the buyer is a government agent.

For these reasons I affirm the decision of the Court of Military Review.