UNITED STATES

v.

David G. SAULTER, 175 42 6375 Sergeant (E–5) U. S. Marine Corps.

NCM 75 2748.

U. S. Navy Court of Military Review.

Sentence Adjudged 22 Aug. 1975.

Decided 25 March 1976.

LT Michael C. Barr, JAGC, USNR, Appellate Defense Counsel; LT(jg) Steven D. Moore, JAGC, USNR, Appellate Government Counsel.

## DECISION

WRAY, Judge:

On 22 August 1975, appellant, Sergeant David G. Saulter, U. S. Marine Corps, defended by both individual civilian counsel and individual military counsel, was tried by general court-martial to a military judge. He was charged with 15 alleged offenses, each involving either the wrongful transfer or the wrongful possession of a prohibited drug, or the wrongful sale of a prohibited drug. Pursuant to his guilty pleas he was found guilty of: one specification of wrongful sale of phencyclidine in contravention of Article 1151, United States Navy Regulations under Charge I in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892; two specifications of wrongful sale of marihuana under Charge II in violation of Article 134, UCMJ, 10 U.S.C. § 934; and three specifications of wrongful sale of marihuana and one of wrongful possession of marihuana, all under Additional Charge II in violation of Article 134, UCMJ.[1]

The judge sentenced appellant to a bad conduct discharge, confinement at hard labor for two years, forfeiture of all pay and allowances, and reduction to pay grade E–1.[2] This sentence was within the terms of the pretrial agreement and received approval by the convening authority.

Appellant advances two contentions. First, he asserts that the court-martial was without jurisdiction over the alleged misconduct of which he had been convicted, and second, he takes the position that his guilty pleas to the Article 134 marihuana offenses under Charge II and Additional II were improvident.[3]

### I

■ Because the offenses of which appellant was convicted occurred outside a military enclave at appellant's home in the civilian community of Jacksonville, North Carolina, while he was in civilian clothes, he asserts that he was not subject to court-martial jurisdiction for this misconduct which he contends was not service-connect-

---

1. He pleaded not guilty to the remaining charges and no evidence was presented on the merits with respect to them due to the existence of a subsisting pretrial agreement.

   The trial judge entered not guilty findings as to these charges, advising appellant that these findings were subject to being vacated if, prior to termination of the trial, the guilty findings with respect to the Charges and specifications to which appellant had pleaded guilty were set aside.

   This was consistent with the apparent understanding of the parties to the trial and the defense registered no objection to the qualification included by the judge in his announced not guilty findings.

2. The wrongful sale specification of Charge I was held by the judge to be multiplicious for sentencing purposes with one of the Charge II wrongful sale specifications and the maximum permissible penalty was therefore considered to be a dishonorable discharge, confinement at hard labor for 30 years, forfeiture of all pay and allowances and reduction to pay grade E–1.

3. Appellant's contention that his guilty pleas to the Charge II and Additional Charge II offenses were improvident is *unrelated* to the fact that these offenses were alleged as violations of Article 134, UCMJ, and not as contraventions of Article 1151, United States Navy Regulations, in violation of Article 92, UCMJ.

Alleging each of the six marihuana offenses under Article 134 resulted in a maximum permissible penalty that included confinement at hard labor for 30 years. Had these six offenses been alleged under Article 92, the maximum permissible penalty would have included confinement at hard labor for but 12 years. *See* MCM, 1969 (Rev.), Table of Maximum Punishments, Section A.

Notwithstanding the absence here of complaint from appellant because Article 134, with its greater authorized marihuana misconduct penalty, was chosen as the statutory authority for most of his judicially confessed misconduct rather than Article 92, the record has been examined for any indication that appellant's pleas of guilty were occasioned because of the Article under which the marihuana offenses were alleged.

No such indication of record is apparent and moreover, the pretrial agreement, which originated with appellant and his counsel is quite favorable to him and would not have lost this favorable quality had the marihuana offenses been alleged as Article 92 violations since the agreement limited the confinement that could be approved to but two years.

Nevertheless, this matter will again be considered before any sentence is affirmed. *Cf. United States v. Hughes,* 1 M.J. 346 (1976).

ed, citing *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).[4]

The evidence of record establishes that throughout the entire period during which the offenses occurred, appellant was a military policeman and a member of the Military Police and Guard Company of Marine Corps Base, Camp Lejeune, North Carolina. The drug sales that he consummated were made to active duty servicemen also stationed at Camp Lejeune.

Since the United States Supreme Court's opinion in *O'Callahan v. Parker, supra,* the United States Court of Military Appeals has consistently held that the off-base, wrongful possession of a prohibited drug by an active duty service person within the civilian community is service-connected misconduct which subjects the offender to trial by court-martial. *Rainville v. Lee*, 22 U.S.C. M.A. 464, 47 C.M.R. 554 (1973); *United States v. Rose*, 19 U.S.C.M.A. 3, 41 C.M.R. 3 (1969); *United States v. Castro,* 18 U.S.C. M.A. 598, 40 C.M.R. 310 (1969). *Cf. United States v. Becker*, 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969).

Similarly, the United States Court of Military Appeals has been consistent in holding that an off-base sale of a prohibited drug by one service person to another service person within the civilian community is misconduct with sufficient service connection or military significance to justify court-martial jurisdiction. *Rainville v. Lee, supra; United States v. Rose, supra. See United States v. Sexton*, 23 U.S.C.M.A. 101, 102, 48 C.M.R. 662, 663 (1974).

But the circumstances of the instant case in support of jurisdiction are more momentous than the mere service status of an accused who, while off-base, wrongfully possesses a prohibited drug or wrongfully sells such a prohibited drug to another member of the armed forces.

The drug transactions in this case were not the result of chance encounters in the civilian community by other members of the service with appellant. The buyers knew appellant was in the drug business. They had gained that knowledge while performing police duties serving with appellant as military policemen at Camp Lejeune. They knew, too, from their on-base military connection with him that his home in Jacksonville was the place where a buy from appellant's drug stock could be obtained. Furthermore, at the time of each sale, the military policeman-buyer was not acting in any capacity as an undercover agent or informer, and his participation in the transaction was unlawful.

Although the operative circumstances that brought them to appellant's home for the purpose of making drug purchases from him were not motivated by any desire to exercise police duties for the purpose of catching a military criminal unlawfully engaged in the business of selling drugs, these circumstances were by no means divorced from their military association with appellant in performing police duties at Camp Lejeune.

The resulting sales were tied to and grew out of the on-base military duties of appellant and the military policemen to whom he supplied drugs for a price.

These circumstances evidence exceptionally strong links to the nearby military community at Camp Lejeune and bolster the factual predicate for court-martial jurisdiction over appellant's wrongful possession and sale misconduct. *Cf. United States v. Sexton, supra; United States v. Rego,* 19 U.S.C.M.A. 9, 41 C.M.R. 9 (1969); *United States v. Crapo*, 18 U.S.C.M.A. 594, 40 C.M.R. 306 (1969); *United States v. Harris*, 18 U.S.C.M.A. 596, 40 C.M.R. 308 (1969).

4. In *O'Callahan*, the misconduct for which the accused had been convicted by court-martial had occurred in the civilian community, encompassed no other service person, was unconnected with his military duties and "..... did *not involve* [either a] question of the flouting of military authority [or] the security of a military post . . .." 395 U.S. at 274, N. 19, 89 S.Ct. at 1691.

The United States Supreme Court concluded that under these circumstances, the *O'Callahan* court-martial had been without constitutional authority to try the accused.

As will be developed, the jurisdictional facts and circumstances in the instant case surrounding appellant's misconduct are, however, entirely different than those in the case of the *O'Callahan* accused.

Nevertheless, still further examination of this case is required. The objective factors governing service connection mentioned in *O'Callahan v. Parker, supra,* and listed in *Relford v. United States Disciplinary Commandant,* 401 U.S. 355 (1971), at 365, 91 S.Ct. 649, 28 L.Ed.2d 102, were subjectively synthesized more recently by the United States Supreme Court in stating that the issue of whether an offense is service-connected:

" . . . turns in major part on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and on whether the distinct military interest can be vindicated adequately in civilian courts. . . ." [5] *Schlesinger v. Councilman,* 420 U.S. 738, 760, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591 (1975).

Confidence of a special nature is entrusted to military policemen. They occupy a uniquely responsible position. Their duties require that they take appropriate action to stop unlawful activity, apprehend those violating the law, and maintain the good order and discipline of the military community they are charged with keeping secure.

Necessarily, a military community relies heavily upon the military police to uphold the law, maintain good order and discipline, and keep the community secure from harm.

When military police become lawbreakers, good order and discipline suffers, respect for police authority·diminishes, crime goes unchallenged and increases, and the security of the military community is severely jeopardized.

Appellant was a noncommissioned officer. He was a sergeant and because of his grade he was expected to set the proper example for others. But his position as a noncommissioned officer had been enhanced—he was a military policeman and one of the Marines at Marine Corps Base, Camp Lejeune who had been entrusted with the authority to exercise general police powers.

Appellant was obligated to stop crime committed by others and he shared in the responsibility for the security of the military community at Camp Lejeune. He knew it was unlawful to traffic in drugs and was undoubtedly well aware of the ongoing concern for unlawful drug activity among servicemen.

Nevertheless, he conducted a drug business from his home where he maintained his unlawful drug supply. Each of the customers was not only an active duty serviceman but, not unlike appellant himself, each of them also enjoyed the trust and responsible status of a military policeman at Camp Lejeune, sharing with him the obligation to stop crime, maintain good order and discipline, and keep the Base secure from harm.

Although appellant's drug sales took place in the civilian community of Jacksonville, his drug stock was not being sold to civilians. His drug sales, the antithesis of his military police responsibility to uphold the law and suppress unlawful drug trafficking, were made only to fellow military policemen. These military police, with the responsibility of deterring crime were themselves engaging in unlawful activity through the corruptive selling operation of appellant.

Undoubtedly, the responsible police positions occupied by appellant and his buyers were severely weakened. Respect for constituted military authority suffered, good order, discipline, and military effectiveness within the ranks of the military police diminished.

The danger inherent in appellant's activity was a threat primarily to the security of the military community at Camp Lejeune, where lawbreaking policemen, corrupted by appellant, could no longer be relied upon to carry out their significant military police duties with which they had been entrusted.

The military interest in appellant's misconduct was therefore of much greater significance than any interest of the civilian

---

**5.** Although this synthesis has not as yet been addressed by the United States Court of Military Appeals, citing *Schlesinger, supra, see United States v. Black,* 1 M.J. 340 (1976).

society which remained relatively unscathed because of appellant's sales operation. The real harm occasioned by appellant was to the military community and not to the civilian community and his trial by general court-martial within the military community at Camp Lejeune was the appropriate forum for vindication of the distinctly greater military interest in his unlawful conduct. *Schlesinger v. Councilman, supra. Cf. Relford v. United States Disciplinary Commandant, supra ; O'Callahan v. Parker, supra.*

Accordingly, appellant's contention that his general court-martial was without jurisdiction is without merit.

## II

■ Appellant next contends that comments he made during the presentencing phase of the trial rendered his guilty pleas to the Charge II and Additional Charge II Article 134 marihuana offenses improvident and that those pleas cannot stand.

These comments of appellant were contained in the earlier portion of his unsworn statement:

"DC: . . . . Your Honor, at this time we would ask an opportunity for the accused, Sergeant SAULTER, to make an unsworn statement. We will proceed by means of questions and answers.

DC: Sergeant SAULTER, you've been convicted today in accordance with your pleas of several offenses involving possession and sale of various drugs. Do you realize that those are serious offenses?

ACC: Yes, sir.

DC: Do you realize that selling drugs and possessing drugs is wrong?

ACC: Yes, sir.

DC: Do you think you've learned something from this experience?

ACC: Yes, sir.

DC: If given the opportunity by this court to be allowed to return to duty, would you do so?

*ACC:* Yes, sir.

*DC:* Do you have anything further you would like to tell the court?

ACC: Yes, sir, that, sir, in the three years I have been a Military Policeman, I've never seen any acts of violence as a result of somebody using marijuana, as it states in Article 134 it caused disorder or unjust or bring discredit to the Marine Corps. I've never seen anybody killed in a car accident or riot start because somebody was high on marijuana and they said something derogatory about a minority group. I've never been to no domestic complaints where a husband has beat his wife, his kids, and cause a disorder in the neighborhood and he was high on marijuana. I've never seen no child abuse cases where a parent—as a result of a parent being high on marijuana or under the influence of it, and to the best of my knowledge it was never scientifically proven to be harmful either physically or psychologically and I can't understand how there can be a law against something that hasn't been proven to be harmful. That's all I have to say, sir."

Earlier in the proceedings the trial judge had entered guilty findings after he had conducted the providency inquiry with appellant into appellant's guilty pleas required by *United States v. Care*, 18 U.S.C. M.A. 535, 40 C.M.R. 247 (1969). At that time the judge considered appellant's pleas provident.

Nevertheless, the instant post-findings comments of appellant were not totally consistent with his pleas of guilty and were nothing further to have been presented by the defense concerning this matter, we would be inclined to agree with appellant that his guilty pleas to the marihuana offenses had been rendered improvident by these comments of his. But, these comments did not conclude appellant's post-findings' remarks concerning marihuana.

As appellant concluded his comments by advising the judge, "That's all I have to say, sir," the judge made the following observation:

"MJ: In view of that statement, it appears then that, at least as to all except Charge I and its specification, I hardly see how the accused could agree that his

conduct would be to the prejudice of good order and discipline or of a nature to bring discredit upon the armed forces. Counsel have any remarks on that?"

Thereafter the defense requested, and the trial judge granted, a recess. It lasted for ten minutes. After the recess, defense counsel received permission from the judge to present an amplification of appellant's earlier comments, which counsel stated had been incomplete:

"DC: Sergeant SAULTER, your remarks which were made immediately prior to the recess may have left a misimpression perhaps in the court's mind as well as my own, I must admit. Would you please explain further what your intentions were with respect to making those remarks?

ACC: Sir, *my remarks, or comments, were on my personal feelings on the subject and not the question of law or whether it was right or wrong. It was wrong and there's no two ways about that.* It was my personal belief, my personal feeling, that some day in the future it will or may be legalized.

DC: Continue, please. Specifically with reference to the use, sale, possession or transfer of marijuana by military personnel, what are your thoughts with respect to the use of marijuana by military personnel?

ACC: That if it's used wrong or used while they are on duty, it can cause disorder or lack of the man's alertness while he's on duty, and it shouldn't—I can't see it on duty. I feel that if the man is off-duty in the future when it's legalized, or if it is, that there should be nothing wrong with it.

DC: Don't you realize that by selling marijuana to personnel even while they are off duty, they could utilize that marijuana while they are on duty?

ACC: Yes, sir.

DC: What effect might that have on their military efficiency?

ACC: It could—their alertness could be decreased. They might—it could be harmful to them, there's no doubt about it.

DC: Then in that respect *it could impair the discipline and morale, the effectiveness of a military personnel [sic]*?

ACC: Yes, sir.

DC: And is it not a fact that *you realized that fact when you sold that marijuana*?

ACC: *Yes, sir.*

DC: So therefore in making your remarks that the use of marijuana might not be harmful, *you were expressing your personal feelings* . . .

ACC: Yes, sir.

DC: . . . *with respect to the legalization of marijuana at some future time*?

ACC: *Yes, sir.*

DC: But, nonetheless, at the time these offenses were committed, you did realize it was unlawful?

ACC: Yes, sir.

DC: And is it your view, further, that it was wrong?

ACC: Pardon me, sir?

DC: Did you realize *it was also wrong as well as being unlawful*?

ACC: *Yes, sir.*

DC: Thank you. Nothing further, sir.

MJ: Well, of course, a realization that it's wrong because one realizes that it's against the law is not quite the question that was posed, but I believe the accused's attitude expressed is sufficient that I no longer have any problem with the providency of the plea.

DC: Thank you, Your Honor.

MJ: Do you have anything further?

DC: No, Your Honor. Defense has nothing further to offer." [Emphasis supplied.]

We are satisfied, as was the trial judge, that this amplification by appellant of his earlier post-findings' comments clarified and eradicated what appeared to have been an inconsistency with respect to the providence of his guilty pleas to the marihuana offenses.

In view of the present posture of the record, there is no residual plea improvidence and no matter that now remains that

is considered truly inconsistent with his pleas of guilty. *United States v. Logan,* 22 U.S.C.M.A. 349, 350, 47 C.M.R. 1, 2 (1973). *Cf. United States v. Timmins,* 21 U.S.C. M.A. 475, 45 C.M.R. 249 (1972); *United States v. Hawes,* 19 U.S.C.M.A. 173, 41 C.M.R. 173 (1969).

Appellant's contention that his guilty pleas to the Charge II and Additional Charge II marihuana offenses cannot stand is therefore not considered meritorious.

While not unmindful that the maximum permissible confinement penalty would have been considerably less had the marihuana offenses been charged as Article 92 vice Article 134 offenses, the approved sentence, which is within the terms of the pretrial agreement he bargained for, is considered entirely appropriate for him, especially in view of the aggravating nature of the circumstances surrounding his misconduct.

Accordingly, the findings of guilty and the sentence as approved by the convening authority are affirmed.

Judge LAPPIN and Judge FULTON concur.